## WOMACK *v.* WOMACK.

Opinion delivered December 10, 1904.

1. JUDGMENT—FRAUD IN OBTAINING—VACATION.—To entitle an unsuccessful defendant to vacate a decree after the term of its rendition, under Sandels & Hill's Digest, § § 4197, 4200, "for fraud practiced by

the successful party in the obtaining of the judgment," he must show that he had "a valid defense to the action in which the judgment attacked was rendered." (Page 286.)

2.  DIVORCE—FRAUD IN OBTAINING DECREE.—Where a husband leads his wife to believe that he will not prosecute a pending divorce suit, and she, relying on such assurance, makes no defense thereto, it is a fraud "in the obtaining of the judgment" for him thereafter to prosecute the suit to decree without giving her opportunity to make defense. (Page 286.)

3.  SAME—CONDONATION.—The resumption of marital intercourse after a known cause for divorce is a condonation thereof. (Page 287.)

4.  HUSBAND AND WIFE—PRESUMPTION AS TO INTERCOURSE.—Where a husband and wife dwell in a mutual home, there is a strong presumption that they are living together as husband and wife, which it will require very clear and convincing evidence to overcome. (Page 288.)

5.  EVIDENCE—CORROBORATION.—Where a wife testified that her husband had assured her that he would not prosecute a pending divorce suit, which was denied by him, proof that the husband, after bringing the suit, and until a short time before the decree was obtained, resided with his wife and with her conducted a hotel tends to corroborate her, and justifies a finding that she was misled as to his intention to prosecute the suit. (Page 288.)

6.  JUDGMENT OBTAINED BY FRAUD—DEFENSE AGAINST.—In a suit by a wife to set aside a decree of divorce in her husband's favor for fraud practiced by him in obtaining it, she having asked for cross relief against him in the same action, she establishes a defense to the divorce suit, as required by Sandels & Hill's Digest, § 4200, when she proves that he was at least equally as much at fault as herself, so that neither was entitled to a divorce. (Page 288.)

7.  HUSBAND AND WIFE—CONVEYANCE.—Where a husband purchases property, and has it conveyed to his wife, it becomes, so far as he is concerned, absolutely her property. (Page 289.)

8.  SAME—ESTOPPEL TO CLAIM WIFE'S PROPERTY.—Where, in bankruptcy proceedings, a husband treats property as his wife's, he cannot thereafter be heard to claim it as his. (Page 289.)

9.  SAME—WHEN CONVEYANCE AVOIDED.—Where a wife conveyed land to her husband in consideration that he would withdraw a pending divorce suit, and he thereafter fradulently prosecuted such suit to decree, the conveyance will be avoided. (Page 289.)

10.  DELAY IN SUING TO VACATE DIVORCE—CHANGE OF STATUS.—Although delay for over a year on the part of the losing party in a divorce suit before applying to vacate the decree for fraud will operate to the

prejudice of such party if the opposing party has in the meantime remarried, such delay will not be material where a remarriage took place after the institution of a suit to vacate the decree. (Page 290.)

Appeal from Saline Chancery Court.

LELAND LEATHERMAN, Chancellor.

Suit by Mrs. J. E. Womack against her husband, D. H. Womack, to set aside a decree of divorce, and to annul a conveyance of land from her to him. Judgment below for defendant, from which plaintiff has appealed. Reversed.

### STATEMENT BY THE COURT.

The appellee was married to appellant, in Tennessee, in 1872. Each was of small means, but some few hundred dollars came to the wife (appellant). They moved to Missouri after a few years. Then the appellee was injured and incapacitated from work for a season, and appellant taught school, and appellee admitted drinking heavily while in Missouri. After a few years there the couple came to Arkansas, first to Little Rock, and later to Saline County, where they have continuously resided for the past quarter of a century. Six children were born to them. Only two, however, survive, and they have grown to manhood and womanhood. Each was industrious, and it is evident that the joint efforts of both accumulated the property hereinafter referred to, part of which is in the husband's name and part in his wife's. In 1895 appellee filed suit for divorce against his wife. Just what were the allegations is not developed. The suit was shortly dismissed; appellee stating to his attorney, when he brought it, that he did not intend to prosecute it, but was bringing it to "scare her." On the 26th of October, 1898, appellee filed another suit against appellant, alleging adultery with W. W. Coffman and cruel treatment as grounds therefor. This was brought to the November term of Saline Chancery Court. Depositions were promptly taken on notice to appellee. The charge of adultery with Coffman was made out by the testimony of appellee in this way: he claimed to have eavesdropped a conversation between them, which, if as stated, was evidence of guilt. There was no corroboration of his evidence tending to prove the adultery at all. Several other witnesses testified to the habitual use of harsh, obscene, vulgar and

profane language by appellant to appellee. Such conduct, unexplained, made a *prima facie* showing sufficient to warrant a chancellor in granting a decree. These depositions were not filed till the day the decree was rendered. Nothing was done at the November term of court; the next, May, term passed, and nothing was done then. On the 31st of August, 1899, at an adjourned term of the court, a decree was rendered for plaintiff (appellee) on the complaint and depositions on file. From the complaint the charge of adultery had been erased, and the decree granted on the other ground. The decree also confirmed to the defendant title to certain lots. No property interests were mentioned in the complaint or evidence, and this confirmation of title is injected into the decree without allegation or evidence. Appellee failed in business in 1895. Prior to that time this property was purchased on credit in the wife's name, and paid for by the joint industry of both. In his assignment and subsequent bankruptcy appellee treated this as his wife's property. It cost $400, was improved several hundred dollars, and was recently sold by Mrs. Womack for $500. The evidence fairly establishes about $700 valuation for it. A hotel, known as the "Womack House", was purchased and paid for by the joint industry of both. The title to that is in appellee, and in his assignment and bankruptcy proceedings it was scheduled as his homestead. Its value is not shown in evidence, but from descriptions and reference to its size, structure, etc., it is evidently valuable property. In addition to these two tracts—one standing in the husband's name, the other the wife's name—was a third, which is one of the chief subject-matters of this suit. It was acquired in this way: When appellee failed, this real estate and his stock of pottery and goods were sold by a receiver, and purchased by Mrs. Womack for $3,300. She executed her note for that amount to Mr. Hughes, who took a mortgage on the property bought and her lots for security. How much of this was for personalty, and how much of the realty, does not appear. Each party claims that he or she paid out all of this $3,300 with little assistance from the other. The evidence, however, is convincing that this, like the other property, is the result of the hard and unremitting toil of both, but in this instance more of the wife's than the husband. She ran the hotel and store, while he travelled and sold pottery. While the most of the labor fell on her, he

was evidently industrious, and doing his share also. On December 14, 1898, after the November term of court had passed, and nothing done in the divorce case, and while the relation of husband and wife still existed, Mrs. Womack conveyed the real estate thus acquired to her husband. There was no present consideration for it. In his bankruptcy proceeding prior to that he had treated this property as his wife's. Mrs. Womack was not represented by attorney in the divorce proceedings, and did not employ any during its pendency. On the 17th of December, 1900, appellant brought this suit in Saline Chancery Court to vacate the divorce decree rendered August 31, 1899, and to set aside the conveyance of December 14, 1898, of the lands conveyed by her on that date to her husband. Evidence was taken by each party seeking to show ground for divorce against the other, and upon the issues of fraud in the procuring of the decree and the deed aforesaid. Needless to say, it is very conflicting. The chancellor dismissed the complaint, and the plaintiff below, Mrs. Womack, appeals.

Evidence was adduced tending to show that Mrs. Womack accepted the decree in good part, and it is urged that she is estopped, after the lapse of time, from maintaining this action. As the evidence shows that there has been no change in the status of the property nor the parties, and no action induced by reason of such delay, this point is not further considered, and the facts not detailed.

*D. M. Cloud, E. H. Vance, Jr.,* and *Andrew I. Roland,* for appellant.

The maxim that fraud vitiates everything applies to a decree of divorce. 2 Nelson, Divorce & Sep. § 1050. The bill presented ample grounds for equitable relief, if sustained by the evidence. 34 Ark. 291; 54 Ark. 539; 1 Black, Judg. 395; 36 Fla. 502; 41 Ill. 449; 113 Ind. 131; 41 Ill. App. 449; 17 Cent, Dig. 172; 23 Ark. 615. Renewal of matrimonial intercourse by a husband after a cause for divorce is a condonation. 62 Ark. 611. Trials on appeal in chancery court cases are *de novo,* and the chancellor's finding will be supported only by a preponderance of the evidence. 41 Ark. 292; 43 Ark. 307; 55 Ark. 112. Appellee's proof fails to show that the indignities of which he complained occurred

within the statutory period.    Sand. & H. Dig. § 2511; Martin's Ch. Dec. 172.

*Murphy & Mehaffy,* for appellee.

To authorize relief against a judgment for fraud, it must have been committed in procuring the judgment. 57 S. W. 728; 101 Mo. 151. A judgment by default is conclusive. 27 S. W. 612. The fraud must have occurred in the very concoction or procurement of the judgment. 135 Mo. 482; 84 Mo. 129; 13 S. W. 674; 26 S. W. 367; 34 S. W. 1070; 91 Am. Dec. 336. Proof of the fraud must be satisfactory and convincing. 60 Tex. 238; 61 Tex. 413; 9 Culp. (Pa.) 471; 73 Am. Dec. 211; 11 Am. Dec. 218; 70 Am. Dec. 307. A decree of divorce is conclusive, and can not be vacated upon an original bill, upon the ground that it was fraudulently obtained. 75 Am. Dec. 482; 7 Ohio, 466; 54 Ark. 639; 5 Ark. 183; 6 Ark. 44; 9 Ark. 354; 32 Ark. 717; 13 Ark. 253; 10 Ark. 428; 49 Ark. 397; 50 Ark. 458; Sand. & H. Dig. § 4200; 1 Black, Judg. 347, 317; 23 L. R. A. 46; 48 Md. 44; 99 Am. Dec. 743; 96 Am. Dec. 623; 6 Wis. 164; 28 Minn. 132; 98 Ind. 165; 74 Cal. 353; 85 Cal. 522; 17 Fed. 36; 173 Pa. St. 1; 71 Fed. 21; 23 U. S. 146; 53 Ky. 624; 50 Ky. 102.

Hill, C. J. (after stating the facts.)    1. The fourth paragraph of section 4197, Sandels & Hill's Digest, authorizes judgments to be vacated, after the term of their rendition, "for fraud practiced by the successful party in the obtaining of the judgment or order." Section 4199 prescribed the procedure for such attack, and it was substantially followed in this case; and section 4200, as construed in *Chambliss* v. *Reppy,* 54 Ark. 539, requires, as a condition precedent to the maintenance of such suit to vacate the decree, that it be adjudged that there was a valid defense to the action in which the judgment attacked was rendered. Therefore this case requires the determination of these two questions: (a) was there fraud practiced in the obtaining of the divorce decree? (b) has Mrs. Womack, the defendant therein, established a defense to the divorce suit?

a.   Where a husband leads the wife to believe that he will not prosecute a pending divorce suit, and she, relying on such assurances, makes no defense thereto, it is a fraud "in the obtaining of the judgment" for him to thereafter prosecute the suit

to judgment, without giving her further opportunity to defend it. Nelson on Divorce, § 1052; *Scanlan* v. *Scanlan,* 41 Ill. App. 449; *Nicholson* v. *Nicholson,* 15 N. E. Rep. 223; *Thelin* v. *Thelin,* 8 Ill. App. 421.

Mrs. Womack testifies that she had such assurances from her husband; that a reconciliation was effected between them by Cooper, the attorney for Womack, who boarded in their hotel; and that the property was conveyed to him as part of such compromise or reconciliation, and that she knew of nothing to the contrary until after the adjournment of court on the day the decree was rendered, when she was notified of its rendition. She is corroborated on this point strongly by Mrs. Gann. Mrs. Gann testified that while the suit was pending she had a conversation with these parties, in which Womack stated that "he had never said aught against her character, and if anybody said he did he was a liar, and if she would convey the property back to him everything would be 'all right and satisfactory,' and the suit would be dropped." Mrs. Womack testifies that it was on the faith of such assurances that she made the deed, and that she believed that such action on her part satisfied him, and that the suit was dismissed, as the former had been. Womack testifies to the contrary, and asserts that there was no such understanding at all, and that twenty-five days before the court convened, in the presence of a witness, he notified her to employ counsel and prepare for a trial, and that the court would require him to pay her attorney and witness fees. He is corroborated by the other party present, but the witness' testimony is weakened on cross-examination to the extent of a partial corroboration of Mrs. Womack's. Cooper positively denies effecting such compromise and reconciliation as Mrs. Womack claimed he did. He was asked, however, the direct question if Mrs. Womack knew that it was Womack's intention to press the divorce suit, and answers it indirectly by an argument tending to show that she did know it.

On this state of the evidence it is difficult to say where the preponderance lies, but there is another question decisive of this point. The resumption of marital intercourse after a known cause for divorce is a condonation thereof. *Turnbull* v. *Turnbull,* 23 Ark. 615; *Reed* v. *Reed,* 62 Ark. 611; 2 Bishop, Mar. & Divorce, § 34.

Mrs. Womack testifies that the marital relations were resumed between her and her husband when the reconciliation was effected, and continued to within a few weeks of the granting of the divorce. Mr. Womack denies this, and says that the marital relations had ceased fifteen years before this suit. They lived in the same house, a hotel; each was doing his and her respective share of the work in conducting it; and there is substantial corroboration of Mrs. Womack's testimony as to their occupancy of the same room during this period between the execution of the deed and the divorce. The rule is, "when a husband and wife dwell in a mutual home, there is a strong presumption that they are living together as husband and wife, and it should require very clear and convincing evidence to overcome such presumption and show an abandonment under such circumstances." *Trimble* v. *Trimble,* 65 Ark. 87. The evidence on behalf of appellee is far from being "very clear and convincing;" in fact, the preponderance is against him. Therefore, under settled rules of viewing such matters, the court must find that all the offenses he charged against his wife in his complaint and evidence were condoned before the decree was rendered. Considering the conflict on the question of the agreement to dismiss the suit in the light of this subsequent marital cohabitation, and also considering the undisputed fact of the continual residence together and joint work in conducting the hotel for ten months after the suit is filed, the conclusion is irresistible that the wife was misled as to the pendency of the suit and his intention to prosecute it, and therefore appellee committed a fraud in the obtaining thereof.

b. Has the appellant, Mrs. Womack, made out a defense to the action? The charge of adultery made on the basis of the alleged incriminating conversation between Coffman and Mrs. Womack lacks any substantial corroboration, and both of the parties testify positively that there was no such conversation, and no such criminality. Coffman's hurried departure is explained by him on the ground that Womack was drunk and hunting for him (which is admitted by Womack), and he returned a few days later to satisfy Womack there was no truth in it, and was persuaded by a friend, who was also a friend to the Womacks, to leave; the friend insisting that, if he left, the couple would settle

their difference, which the evidence shows they did, to the extent at least of living together. On the other hand, the evidence fairly proves Mrs. Womack guilty of abusive and outrageous treatment of her husband. Such treatment, unexplained, and without equal fault on his part, would justify the divorce. But she makes out against him such conduct as, unexplained and without equal fault on her part, would justify her in having a divorce granted on her petition. It is only fair to Mr. Womack to say that the outrageous and indecent charges made against him are not sustained by the evidence. The charge of adultery against him, while more strongly corroborated than his charges against her on that score, is not established to the satisfaction of the court. But his drunkenness at times, his abuse of her, his bringing of various unsupported charges of adultery against her, and his fraud on her property right as herein set forth, are established. The rule is settled in such cases as follows: "No relief will be afforded to either party if the testimony discloses that they are equally at fault." *Cate* v. *Cate,* 53 Ark. 484. This makes a defense to the action of the husband.

2. The suit is also to set aside the deed made on the 14th of December, 1898. Conceding that Womack purchased the land, and paid for it, and had the title taken in name of his wife, it was absolutely her property. "If a husband purchases property, and has it conveyed to his wife, or expends money in improving her property, the advances will be presumed to be gifts. The law will not imply a promise on her part to repay him." *Ward* v. *Ward,* 36 Ark. 586. But the facts do not justify this conclusion, for the evidence shows her work contributed at least equally to the acquisition of this property, and he has in bankruptcy proceeding treated it as hers, not his, and he can not now be heard to say it was his. Rodgers, Domestic Rel. § 259. There can be no question that she owned this property freed of any legal, equitable, or moral obligation to convey it to him. No consideration whatever is shown for it; Womack claiming that she deeded to him "from a sense of right, which seemed for a little time to guide her." She could have made a gift to him of this property, but the rule governing such gifts is as follows: "As the husband is supposed in law, as well as equity, to exercise a very potent influence over his wife, courts always scrutinize conveyances and

S C 10

transfers from the wife to the husband." Rodgers on Domestic Relations, § 260. Scrutinizing this conveyance in the light afforded by the situation of the parties at the time, the subse- quent conduct of appellee, the positive testimony of Mrs. Womack and Mrs. Gann that this conveyance was in consideration of withdrawing the divorce suit, it must be avoided.

The whole case has been developed in the very voluminous testimony in this case, and there can be no useful purpose served in ordering another trial where each party seems to have fully exhausted all charges against the other. The decree is reversed, and the cause remanded with directions to enter a decree vacating the divorce decree, and in the action then left pending to enter a decree on the evidence taken in this suit denying a divorce to either party, and to decree a cancellation of the deed from Mrs. Womack to her husband, and adjudge the costs against appellee in both courts.

### OPINION ON MOTION TO MODIFY DECREE.

HILL, C. J. In the statement of the case the court declared that, as there was no evidence of a change in the status of the property or parties after the divorce suit and prior to the bring- ing of this suit to vacate it, the court would not consider that such delay (something over a year) estopped appellant from prosecut- ing the action to vacate the judgment of divorce as fraudulently obtained. Since the decision here appellee files a motion to modify the decree, and sets forth that he was married in Okla- homa on July 15, 1903; that a child was born of such marriage, which has since died; and that he contracted the marriage with the lady who married him in good faith, having no idea that there was or would be any attack on the decree of divorce, and praying a modification to the extent that the cause be remanded and evi- dence adduced of these facts, to the end that this marriage be protected. The record shows this suit was commenced December 17, 1900; decree was rendered June 23, 1901; appeal was then prayed and granted, and transcript filed in this court October 8, 1901, where it has been pending since. These suits to vacate decrees on ground of fraud are maintained even when the party committing the fraud has remarried before the institution of the

suit. Bishop, Marriage & Divorce § § 1550, 1552. Delay, however, will operate to the prejudice of the party applying, and, if unreasonably continued, bar the right. The delay in this case in bringing the suit did not work any prejudice to third person. Had the party remarried while there was considerable delay, that would be a circumstance strongly tending against sustaining the action. No such considerations are in this case. The marriage occurred in the face of an appeal pending here· in a case directly seeking to annul the divorce.

The modification is refused.

Wood, J., dissents from the original judgment and the overruling of this motion, on the ground that the evidence was sufficient to sustain the decree.