NEVILS v. UNION TRUST COMPANY, EXECUTOR.

Opinion delivered January 19, 1914.

1. TRUSTS—RESULTING TRUSTS—EVIDENCE.—It is admissible to prove a trust in opposition to a deed or other written instrument, but the evidence for this purpose must be of so positive a character as to leave no doubt of the fact. (Page 49.)

2. TRUSTS—RESULTING TRUSTS—HOW ESTABLISHED BY PAROL.—To establish a resulting trust by parol, the evidence must be full, clear and convincing. (Page 49.)

3. RESULTING TRUSTS—SUFFICIENCY OF EVIDENCE TO ESTABLISH.—In an action to enforce an alleged resulting trust in certain property, the evidence, *held* not sufficiently clear to justify a court of equity in declaring a resulting trust. (Page 50.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Johnson & Gray,* for appellant.

Counsel review and discuss the testimony, and contend that a clear preponderance of the evidence' establishes a resulting trust in favor of the appellant.

The question in this case is not who bore the expense of the improvements, but *who paid the purchase money for the lot itself* in controversy here. And on this point the evidence is positive, first, that appellant paid the consideration, at the time of the purchase,. for the lot in question, out of his own means; and, second, that when he had the conveyance made to his mother, he intended that he should remain the owner of the lot, and have the beneficial interest therein. Pomeroy's Eq. Jur., § 589; 40 Ark. 62-66; 27 Ark. 77-87; 30 Ark. 231; 54 Ark. 499; 23 Pa. St. 265; 113 N. C. 402; 64 Ark. 155; 42 Ark. 503; 108 Ark. 276.

*J. A. Watkins* and *C. M. Walser,* for appellees.

Counsel discuss the evidence and contend that it does not measure up to the high degree of proof necessary to establish a resulting trust; that none of the essential elements of a resulting trust have been established. This court holds to the rule that "to establish a resulting trust by parol, the evidence must be full, clear and convincing." 82 Ark. 569; 79 Ark. 419; 64 Ark. 155; 44 Ark. 365; 48 Ark. 174.

If the declarations attributed to Mrs. Nevils by certain witnesses to the effect that the house she was living in was her son's property, were really made, they were mere casual statements made in the course of general conversation, and can have no weight in determining the title to real property. 75 Ark. 446.

McCULLOCH, C. J. Appellant, John T. Nevils, instituted this action in the chancery court of Pulaski county against the executor of the last will and testament of his mother, Eliza J. Nevils, and his sisters, the other heirs of said decedent, to enforce an alleged resulting trust in a lot in the city of Little Rock in which title was vested in said decedent.

Appellees answered the complaint, and upon the issue thus joined, the chancery court decided that the testimony was insufficient to establish a resulting trust, and dismissed the complaint for want of equity.

Three adjoining lots in the city of Little Rock were purchased from one Morley on November 12, 1886, and on that day he executed three deeds, one conveying a lot to appellant, another conveying a lot to appellant's widowed mother, Eliza J. Nevils, and the other conveying a third lot to appellant's sister, Mary A. Angell, one of the defendants in this action.

During the next year (1887) a house was built on the lot conveyed to Mrs. Nevils, which is described as lot 8, in block 256.

Appellant claims that he purchased both lots, the one conveyed to himself, and also the one conveyed to his mother, and paid all of the purchase price, and that he furnished most of the money with which the house on lot 8 was built. He asserts that this was done upon an understanding with his mother that she should occupy the property as a home as long as she lived, but that the property should belong to him. Appellant's statement of the conversation with his mother is in the following language:

"I told her she would have a home there as long as she lived. * * *"

Q. Was there any understanding at all between you and your mother as to that lot going back to you at her death?

A. She said I would get it back.

Q. At her death?

A. Yes, sir.

Q. Has she ever paid you anything for that property?

A. No, sir.

Mrs. Nevils occupied the property as long as she lived, and died on July 30, 1909, at the advanced age of eighty-three years. She left a will bequeathing the residue of her estate equally among her children, after pro-

viding for the payment of debts and the cost of erecting a monument at her grave.

This action was instituted within a few months after Mrs. Nevils' death.

Appellant's father died in the year 1881, leaving an estate consisting of a farm in Pulaski county, and, perhaps, some other property, all of which was divided between the widow and children. They all lived in and about Little Rock for a time, but the other children subsequently moved away. Appellant and his mother continued to reside in Little Rock.

It appears from the evidence that Mrs. Nevils and appellant both had funds in bank, as far back as the years 1884 or 1885.

Appellant testified that on the day of the execution of the deed, he drew out of one of the Little Rock banks the sum of $1,480, and used it in paying for both of the lots, the one which was deeded to him, and the one which was deeded to his mother. He produced the original check for that amount, which was drawn to his own order, and there is endorsed thereon a memorandum in his own handwriting to the effect that the money was used to pay for lots. The accounts of the bank were produced, which show appellant's account, and that that amount of money was drawn out on the day named.

On the contrary, there is affirmative testimony to the effect that the purchase was made by Mrs. Nevils herself, and that she used her own funds in paying for it. The testimony also shows that the house that was built on the lot in the year 1887 was paid for by Mrs. Nevils, and receipts were introduced in her own name establishing that fact.

Appellant contends that he paid some of the cost of constructing the house and of making repairs and adding rooms from time to time. He makes the general statement that he paid "the biggest part on the house," but does not specify the particular amount that he paid.

In the year 1897, Mrs. Nevils mortgaged the property to secure a debt of $600 for borrowed money, and

did not consult her son, appellant, about the transaction, and subsequently this debt was paid by a check of appellant. Appellant testified that he paid this out of his own funds.

Much testimony was adduced in regard to the relations between appellant and his mother, the most of it showing pleasant relations, and some to the contrary.

Conflicting statements of deceased are proved with reference to the ownership of the lot, and on all of these points the evidence seems to preponderate in favor of appellant's contention.

This court, at an early date, established the rule that it is "admissible to prove a trust in opposition to a deed or other written instrument, but the evidence for this purpose must be of so positive character as to leave no doubt of the fact." *Crittenden* v. *Woodruff,* 11 Ark. 82.

This rule has been applied by this court, in a great many cases, to the establishment of resulting trusts. Many of the cases are cited on the briefs of counsel, and are so numerous that they need not be cited again. It suffices to say that the rule has been rigidly adhered to by this court that, "to establish a resulting trust by parol, the evidence must be full, clear and convincing." *Johnson* v. *Richardson,* 44 Ark. 365.

Other cases state the rule in somewhat different language, but the effect is the same.

Now, when we apply the rule to the testimony in this case, and accord proper weight to the finding of the chancellor, we can not say that the decree is erroneous. Appellant introduced positive testimony in support of his contention that he paid the purchase price of the lot and furnished some of the money to build a house thereon, and that his mother took the title with the understanding that she was to hold the property for him. But there is a sharp conflict in the testimony, and we can not say that appellant has proved his case with that degree of clearness that would justify a court of equity in declaring a resulting trust. The transactions concerning the purchase of the property, and the construction of the house

thereon, occurred nearly twenty-five years before the witnesses were called on to testify. The precise relations existing between the parties, and the evidences of this, and other, business transactions which took place between them, are, more or less, veiled in doubt, and, aside from a positive conflict in the testimony, it can not be said that appellant has proved by testimony "full, clear and convincing," that he paid the purchase price of the lot, or that he furnished any considerable amount of the money to build or enlarge the house thereon.

The will of decedent was executed in 1904, when appellant was the only one of her children living in Little Rock and in daily association with her. There is no reason shown why she should have intentionally disregarded what appellant claims to have been her obligation to him, and leave the property equally to him and the other children. The fact that shortly before her death, she gave an order to her banker to pay over the balance of her funds in bank to appellant, shows that she intended to give him some preference, and the presumption naturally arises that she measured her obligation to him and felt that she had fully acquitted herself of it. The fact, too, that she mortgaged the property for a considerable sum without consulting appellant, shows that she felt that she held the title for all purposes, and was authorized, without consulting appellant, to mortgage it for her own debts. It is true that appellant shows, by his own testimony, and by the check produced, that he paid off the mortgage, but there were other transactions between him and his mother at that time, and the payment might be attributed to some of those transactions. At least, when the whole testimony is taken together and given its proper weight in the light of his interest in the case, we can not say that the chancellor erred in rejecting appellant's testimony on the various points presented.

The proof failing to establish a resulting trust with sufficient certainty, the chancellor was correct in refusing to overturn the deed conveying the property to deceased in fee simple. The decree is therefore affirmed.