Barnette v. Miller.

Opinion delivered November 19, 1917.

Marriage and divorce—action to set aside decree of divorce—
lapse of time.—Plaintiff obtained a divorce from her husband
M. in 1908, upon the ground of his misconduct toward her. She
then remarried and was again divorced. M. also remarried and
died in 1916, leaving four children by the second marriage.
Plaintiff then brought an action to set aside the decree of divorce
between herself and M. *Held,* plaintiff's action could not be
maintained.

Appeal from Scott Chancery Court; *W. A. Falconer,*
Chancellor; affirmed.

*Jo Johnson,* for appellant.

1. A divorce decree can be set aside on bill of
review after the death of the husband. 80 Ark. 451;
44 L. R. A. (N. S.) 507 and note; 77 Atl. 766; 2 Bishop
Mar. & Div., § 1554-5.

2. The delay was explained and the findings and
decree are against the evidence. The decree was obtained
by fraud. 75 Ark. 415; 80 *Id.* 451.

McCULLOCH, C. J. The plaintiff, Emilie Barnette,
intermarried with M. C. Miller in Sebastian County,
Arkansas, in the year 1891, and they lived together in
Sebastian and Scott counties, Arkansas, until the year
1908, when they separated in Scott County and a decree
for divorce was rendered by the chancery court of Scott
County in an action instituted by the present plaintiff
against her said husband. The decree, in addition to
a divorce, awarded to the plaintiff the sum of $500 out
of the property of M. C. Miller, and also required the
latter to pay the cost and attorneys' fees. After the
divorce was granted the plaintiff intermarried with one
Barnette and has since obtained a divorce from him. Mil-
ler intermarried with another woman and there are four
children now living who were the issue of that marriage.
Miller died in March, 1916, and in November of that year
the plaintiff began the present proceedings in the nature
of a bill of review to set aside said decree for divorce

on the ground of its procurement by fraud. The administrator of the estate of M. C. Miller, deceased, and the heirs at law of said decedent were made parties. The plaintiff alleged in her complaint that her husband subjected her to cruel treatment and threatened to kill her to compel her to consent to the procurement of the divorce, and that by force and intimidation she was compelled to go to an attorney in the county and consent to the procurement of the divorce. She alleged that she did not know that she was to be made, or was made plaintiff in the divorce suit. The chancellor heard the matter upon the pleadings and the testimony and dismissed the complaint for want of equity. The record in the divorce suit was introduced and shows that it was instituted by the plaintiff and that the ground for divorce set forth in the complaint was that the defendant, M. C. Miller, had been guilty of adultery. The deposition of the plaintiff herself appears in the record and her testimony tended to establish the charge of adultery against her husband. She testified in that deposition that she and her husband had separated on account of his criminal intimacy with another woman, and that she would not again live with him. The acts of adultery were proved by other witnesses and upon the testimony thus adduced the chancellor rendered the decree.

The plaintiff in giving her deposition in the present case testified that her husband and his brother grossly mistreated her and by threats and intimidation compelled her to sue for the divorce. Her statements are contradictory, however, for she admitted that she had appeared and testified in the case concerning her husband's misconduct. Her testimony is contradictory in many other particulars. The attorney who conducted the former litigation testified that he was employed by the plaintiff to prosecute the divorce suit, and that he did so solely at her instance. The plaintiff offered to prove by certain other witnesses that her former husband, Miller, had mistreated her in many ways, but the

chancellor declined to hear the testimony on the ground that it was immaterial.

The chancellor was correct in refusing to set aside the decree for divorce under the circumstances shown by the evidence. The plaintiff is estopped by her own conduct and by lapse of time and change of circumstances of the parties to ask an annulment of the divorce decree. She disclaimed any desire to share further in the estate of her former husband, but says that she merely wants her status restored as the wife of M. C. Miller. The effect of the restoration of that status is, however, more far-reaching than mere property rights, for Miller married again and has left a widow and children who were the issue of that marriage. The plaintiff married again too, and waited eight years, and after the remarriage of her former husband and his death before she attempted to set aside the decree.

"There are excellent reasons," says Mr. Bishop in his work on Marriage and Divorce (Vol. 2, sec. 1533), "why judgments in matrimonial causes, whether of nullity, dissolution or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with and after it so many collateral rights and interests of third persons that uncertainty and fluctuation in it would be greatly detrimental to the public. And particularly to an innocent person who has contracted a marriage on faith of the decree of the court and calamity of having it reversed and the marriage made void is past estimation. These considerations have great weight with the courts, added whereto there are statutes in some of the states according a special inviolability to such judgments."

The rule thus stated by Mr. Bishop was applied by this court in *Corney* v. *Corney,* 97 Ark. 121, and *Womack* v. *Womack,* 73 Ark. 281, and we are of the opinion that its application to the facts of the present case are conclusive against the plaintiff's effort to set aside the decree. The other testimony concerning the mistreatment

of plaintiff by her husband was, as held by the chancellor, wholly immaterial. The decree is, therefore, affirmed.