PIERCE, GUARDIAN, *v.* McDANIEL.

4-6232                                                     148 S. W. 2d 154

Opinion delivered March 3, 1941.

*T. O. Abbott,* for appellant.

*McKay, McKay & Anderson,* for appellee.

McHANEY, J. Appellant is the duly appointed, qualified and acting guardian of the person and estate of her mother, Mrs. S. E. McMahen, a person of unsound mind, having been so appointed on September 8, 1939. On the same day, she brought this action against appellees to cancel five certain deeds of conveyance executed and delivered by her mother to her undivided one-fourth interest in and to the oil and gas royalty in and under a certain described 78-acre tract of land in Columbia county, and the cancellation of certain conveyances of various royalty interests by those five grantees or some of them to other appellees named in the complaint. The five grantees to whom Mrs. McMahen conveyed and the dates of their deeds are as follows: first, Paul McDaniel, June 27, 1938; second, Marcus Justiss, July 16, 1938; third, Minnie V. Campbell, September 20, 1938; fourth, J. E. Reasons, November 17, 1938; and fifth, Willie Sauter, December 22, 1938. The sole ground alleged in the complaint for a cancellation of these various deeds executed by her to the five persons above named and of the mesne conveyances to the other appellees is that her ward was, at that time and at all times since and now is, "a person of unsound mind, incapable of understanding the importance, nature, consequences and effects of the execution of any and all of said deeds." There was no allegation of fraud or other inequitable conduct on the part of her grantees, nor any insufficiency of the consideration paid by them, and no proof was directed to this purpose. The answer was a general denial and a prayer that the complaint be dismissed as being without equity. Trial resulted in a decree for appellees.

Both sides agree that only a question of fact is presented by this appeal. The rule of law governing in

cases of this kind has been stated in many cases, one of which, *Atwood* v. *Ballard,* 172 Ark. 176, 287 S. W. 1101, was very recently quoted from in *Johnson* v. *Foster, ante,* p. 518, 146 S. W. 2d 681, as follows: "If the maker of a deed, will or other instrument, has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting his own interests in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress or undue influence, mental weakness, whether produced by old age or through physical infirmities will not invalidate an instrument executed by him."

We have here a record of nearly 450 pages, consisting of about 435 pages of testimony. Nineteen witnesses testified for appellant, twelve of whom are related directly or indirectly to the ward. Fifteen witnesses testified for appellees, four of whom are related directly to the ward. All those testifying on either side were lay witnesses, except three physicians for appellant, one of whom, Dr. McWilliams, is a nephew, and except two physicians for appellees. This testimony is in hopeless conflict. It is undisputed that Mrs. McMahen was incompetent at the time Dr. Mahoney examined her on September 1, 1939, and has been since that time. She was suffering from pellagra and had been since 1935, according to Dr. McWilliams, and perhaps longer. She was 78 years of age at the time of making these conveyances, but was able to go to the office of an attorney in Magnolia on each occasion a deed was executed, but was unable to sign her name to the instruments although she had been able to write at some time in the past. From the death of her husband in February, 1937, or from about March 1, 1937, to August, 1939, she lived with her son, John McWilliams, and his wife, and their testimony is to the effect that she was mentally capable and knew what she was doing in each instance of signing said deeds.

Much reliance is placed by appellant on a letter written to her by Mrs. John McWilliams dated August 23, 1939, wanting appellant or her sister, Ruby, to come and get Mrs. McMahen, because she could not keep her any longer. We see nothing in this letter indicating insanity of Mrs. McMahen. No reason is assigned except she said "the time has come for you all to help do something with her." This is not an unusual desire on the part of some daughters-in-law to get rid of their mother-in-law. There is no doubt, however, that she was somewhat disorientated at that time, which was some eight months after the last deed mentioned above was executed by her. The attorney who drew the deeds and the notaries who took the acknowledgments testified that she appeared to know what she was doing and fully understood same. The price paid ranged from $25 to $125 per royalty acre, and it is not questioned that same was fair and reasonable. The discovery well in the Atlanta field, about two miles from the land in question, was brought in on December 19, 1938, and the last deed to her royalty was dated December 22, 1938, only three days later, to Willie Sauter. He paid $420 for 3¾ royalty acres, or $112 per acre. This last sale took all her royalty interest in the 78-acre tract, and it was testified by both Sauter and Chambers, the attorney who prepared the deed, that the latter advised her at the time that this deed conveyed all her remaining royalty, asked her if she so understood it, and she answered that she did.

We cannot undertake to detail and analyze the testimony of the various witnesses as to do so would extend this opinion greatly. Suffice it to say that we have read the entire testimony as abstracted by both parties, have given it careful consideration, and have reached the conclusion that we cannot say that the findings and conclusions of the trial court are against the clear preponderance of the evidence.

Affirmed.