McKINDLEY *v.* HUMPHREY.

4-6742                                          161 S. W. 2d 962

Opinion delivered May 18, 1942.

334

*Hibbler & Hibbler,* for appellant.

*Paul L. Barnard* and *J. S. Abercrombie,* for appellee.

HOLT, J. Eliza James (colored) died intestate January 6, 1941, at approximately eighty years of age. She left surviving eight adult children. Her husband died July 12, 1939.

In 1926, she purchased lot 7, block 7, Davis Addition to North Little Rock, Arkansas. The consideration for this property was $1,500, of which $400 was paid by Eliza James in cash and the remainder was evidenced by fifty-five notes in the amount of $20 each. September 7, 1940, Eliza James executed a deed conveying this property to her daughter, Carrie Humphrey, one of the appellees here.

May 26, 1941, complaint was filed in the Pulaski chancery court in which seven of the surviving children were named plaintiffs and Carrie Humphrey was named defendant. In the complaint it was sought to set aside and cancel the deed which Eliza James had executed in favor of her daughter, Carrie Humphrey, on the grounds: (1) That Eliza James at the time she executed

the deed was mentally incompetent; (2) that appellee, Carrie Humphrey, obtained the execution of the deed through fraud, imposition and duress; and (3) that plaintiffs bought said property "by their individual contributions, paid for the same, with the understanding and agreement among all of the heirs that Eliza James, the mother, and Lida James, the sister, who was to make her home with Eliza James and care for the mother, should have a home and the use of the property so long as each should live and, after the death of Eliza James, Lida James was to hold the property as trustee for the heirs and the property should then become the joint estate and property of the heirs and subject to their ownership and disposition."

Hattie Wilson and Flake James, at their request, were permitted to withdraw as plaintiffs and as defendants filed separate verified answers to the complaint in which they admitted that their mother executed the deed in question to their sister, Carrie Humphrey, appellee, denied all other allegations in the complaint, and specifically alleged that their mother was mentally competent when she executed the deed in question; that she was not influenced by fraud, imposition, or duress, but understood fully what she was doing and that she desired "to deed this property to her daughter, Carrie Humphrey, because of the financial assistance and personal attention rendered by Carrie Humphrey to her mother, Eliza James."

Appellee, Carrie Humphrey, filed separate answer admitting the execution of the deed conveying the property to her, but denied all other material allegations.

Upon a trial, at which the testimony of nineteen witnesses was heard, the court found the issues in favor of appellees and this appeal followed.

Appellants first argue that Eliza James was mentally incompetent, due to advanced age and physical infirmities, to execute the deed in which she conveyed the property in question to her daughter, Carrie Humphrey, and that Carrie obtained the deed through fraud, imposition and duress.

The rule governing in cases of this nature has been many times announced by this court. In *Atwood* v. *Ballard*, 172 Ark. 176, 287 S. W. 1001, the rule is clearly stated in this language: "If the maker of a deed, will or other instrument, has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting his own interests in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue influence, mental weakness whether produced by old age or through physical infirmities will not invalidate an instrument executed by him."

This court in the recent cases of *Johnson* v. *Foster*, 201 Ark. 518, 146 S. W. 681, and *Pierce, Guardian,* v. *McDaniel*, 201 Ark. 1097, 148 S. W. 2d 154, reannounced this rule.

On the record before us, while the testimony as to Eliza James' mental capacity is in conflict, we think the preponderance thereof supports the chancellor's finding. Two disinterested witnesses (both white) testified on behalf of appellees. W. M. Hudson, in the real estate business in Little Rock for the past thirty years, prepared the deed in question and was present along with F. E. Sutton, another real estate man, when Eliza James executed the deed. Quoting from his testimony: "A. She seemed to be all right; I didn't see anything wrong with her. Of course, she was feeble—more or less feeble, of course—what you would expect of anyone as old as she. I didn't think she was as old as they are talking about; I thought she was about seventy-five or eighty years old. Q. But you judged her to be thoroughly capable, mentally, of signing a deed when you attested it as a notary public? A. Yes, sir, I did. I am very careful about old people, especially. I want them to know what they are doing when they sign a deed."

F. E. Sutton testified that he was present along with W. M. Hudson at the home of Eliza James at the time she executed the deed; that "he (Mr. Hudson) read the deed over to her and she said, 'That is exactly what I wanted,' and signed it. She had as much sense at that time as I've got, and she wasn't any more feeble than any woman of her age; she knew exactly what she was doing."

The testimony of Carrie Humphrey, Hattie Wilson, two daughters, and Dr. Atkinson corroborated the testimony of Hudson and Sutton as to the mental competence of Eliza James. There were two other witnesses unrelated to appellee—Carrie Humphrey—whose testimony also tended strongly to corroborate appellees.

Twelve witnesses, including the five interested appellants, gave testimony which tended to show that Eliza James was mentally incompetent when the deed in question was executed. We think it unnecessary to attempt to abstract this testimony here for to do so would unduly extend this opinion. It suffices to say, however, that we find much of appellants' testimony conflicting within itself and not convincing. To illustrate, appellant, Ellie James, who contends that the property in question was to be divided equally among all the heirs upon the death of Eliza James, testified: "Q. Who is living in the house now? A. Lida McKindley and her two little girls that she promised to give the home to."

It is also our view that most, if not all, of the evidence supports the chancellor's finding that no fraud or imposition was practiced upon Eliza James by Carrie Humphrey in procuring the deed. We quote from the decree as follows:

". . . Eliza James was an elderly colored woman and, although at times weak and forgetful, she was ordinarily possessed of the average health, strength and mentality and judgment of a person of her age; that she had, for several years prior to September 7, 1940, declared it her desire that the above mentioned property be deeded to the defendant, Carrie Humphrey; that, on September 7, 1940, Eliza James, while in full possession

of her mental faculties and fully retaining in her memory without prompting, the extent and condition of her property and fully comprehending how she was disposing of same and to whom and upon what consideration, and being mindful of all of her children and her obligations to them, and their services for her and acting without the presence of any fraud, duress or undue influence, did execute a warranty deed to lot 7, block 7, Davis Addition to North Little Rock, Pulaski county, Arkansas, to Carrie Humphrey, conveying the fee simple title to said property to said Carrie Humphrey.''

Appellant's final contention is that they bought the property in question with their own contributions, taking title in the name of their mother and with the understanding that their mother and Lida James McKindley (a sister) should have the use of the property so long as each should live and after the death of the mother, Lida James McKindley, was to hold the property as trustee for all the heirs. We cannot agree with this contention.

The record reflects that at the time Eliza James purchased this property a part of the consideration, amounting to $400, was paid by her in cash, and she executed fifty-five $20 notes to cover the balance of the purchase price.

Two of the boys, McCoy James and Ellie James, testified that they paid the fifty-five notes, which their mother had executed, as they became due. Carrie Humphrey denied that these notes were paid by McCoy and Ellie, but testified that they were paid by her mother.

Appellants contend that the evidence is sufficient to establish an implied or resulting trust by reason of the fact that by agreement between them and their mother they were to pay, and did pay, part of the purchase price of the property in question. There is no contention that the evidence is sufficient to establish an express trust, there being nothing in writing to evidence it.

In *Marrable* v. *Hamilton,* 169 Ark. 1079, 277 S. W. 876, this court said: ''It has become the settled doctrine of this court that, in order to constitute a result-

ing trust by reason of the payment of purchase money, the payment must be made at the same time or previous to the purchase and must be a part of the transaction. In other words, the payment must be prior to, or contemporaneous with, the purchase so as to make it a part of the same transaction, and a trust will not result from payments subsequent to the consummation of the purchase. *Sale* v. *McLean,* 29 Ark. 612; *Red Bud Realty Co.* v. *South,* 96 Ark. 281, 131 S. W. 340; *Hunter* v. *Feild,* 114 Ark. 128, 169 S. W. 813.''

And in *Lisko* v. *Hicks,* 195 Ark. 705, 114 S. W. 2d 9, this court said: ''The rule is that a parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a purchaser that he buys for another, without an advance of money by that other, fails within the statute of frauds, and cannot give birth to a resulting trust. *Bland* v. *Talley,* 50 Ark. 71, 6 S. W. 234.''

And in *Bray* v. *Timms,* 162 Ark. 247, 258 S. W. 338, it is said: ''It is a well settled principle that, while trusts resulting by operation of law may be proved by parol evidence, yet the courts uniformly require that such evidence be received with great caution, and that it be full, free and convincing. *Colgrove* v. *Colgrove,* 89 Ark. 182, 116 S. W. 190, 131 Am. St. Rep. 82; *Hunter* v. *Feild,* 114 Ark. 128, 169 S. W. 813. See, also, *Nevill* v. *Union Trust Co.,* 111 Ark. 45, 163 S. W. 162.''

When all the testimony before us is considered, we think it falls far short of establishing a trust relationship, as contended by appellants, by that degree of clearness and certainty of proof required under the rules announced in the decisions of this court.

On the whole case, finding no error, the decree is affirmed.