SIMPSON *v.* THAYER.

4-8720                                        217 S. W. 2d 354

Opinion delivered February 7, 1949.

*Boyd Tackett* and *Shaver, Stewart & Jones,* for appellant.

*George E. Steel* and *E. K. Edwards,* for appellee.

HOLT, J.  Appellant's wife, Carrie Isadore Simpson, died testate, June 26, 1947.  Appellees are Mrs. Simp-

son's brothers: Dr. and Mrs. Simpson had been married about forty-seven years and had lived all of this time, with the exception of about sixteen months, in Nashville, Arkansas. No children were born to this union. During their married life, they had acquired title to a number of pieces of real estate in Howard county, all in the name of Mrs. Simpson, and at her death, the title to all of this property was still in her name.

The present suit was instituted by Dr. Simpson to have appellees, "as sole heirs of his deceased wife, declared trustees of the lands in suit, which stood in Mrs. Simpson's name at the time of her death; to divest the legal title out of them and to vest same in plainitff," (appellant).

Appellee's answer was a general denial and pleaded the Statute of Frauds. The trial court found the issues against appellant and from the decree is this appeal.

Appellant says: "One line of testimony indicates that Mrs. Simpson held the legal title to the properties in suit in trust for appellant. According to another line of testimony, she held the legal title as community owner of an equitable entirety estate, under an understanding and agreement with her husband that, upon the death of the one, all properties jointly owned would pass to the survivor. (Or it might be said that Mrs. Simpson held as trustee for the equitable entirety estate.)"

Appellant contends that an implied, or a resulting trust, was created in his favor, which may be shown by oral testimony, or in any event, that he owned "an equitable entirety estate in the property" involved.

There are certain well established guiding rules in determining the questions presented. This court in *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867, said: "It has been frequently held that where the husband purchased and paid for lands, taking the deeds therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift to her, and the

law does not imply a promise or obligation on her part
to refund the money or to divide the property purchased
or to hold the same in trust for him. His conduct is
referable to his affection for her and his duty to protect
her against want, and it will be presumed to be a gift
and, so far as he is concerned, becomes absolutely her
property. *Wood* v. *Wood,* 100 Ark. 370, 140 S. W. 275;
*Womack* v. *Womack,* 73 Ark. 281, 83 S. W. 937, 1136;
*O'Hair* v. *O'Hair,* 76 Ark. 389, 88 S. W. 945," and in
*Parks* v. *Parks,* 207 Ark. 720, 182 S. W. 2d 470, we
said: "And the rule is also well settled that the proof
to overcome this presumption of gift should be clear
and convincing. . . . 'Moreover, his (the husband's)
subsequent improvements, payment of taxes and insur-
ance are all 'referable to his natural desire to manage
and care for his wife's property.' "

In the recent case of *McKindley* v. *Humphrey,* 204
Ark. 333, 161 S. W. 2d 962, we said: "In *Marrable* v.
*Hamilton,* 169 Ark. 1079, 277 S. W. 876, this court said:
'It has become the settled doctrine of this court that, in
order to constitute a resulting trust by reason of the
payment of purchase money, the payment must be made
at the same time or previous to the purchase and must
be a part of the transaction. In other words, the pay-
ment must be prior to, or contemporaneous with, the
purchase so as to make it a part of the same transaction,
and a trust will not result from payments subsequent
to the consummation of the purchase.' . . . 'It is a
well settled principle that, while trusts resulting by oper-
ation of law may be proved by parol evidence, yet the
courts uniformly require that such evidence be received
with great caution, and that it be full, free and con-
vincing. *Colegrove* v. *Colegrove,* 89 Ark. 182, 116 S. W.
190, 131 Am. St. Rep. 82; *Hunter* v. *Field,* 114 Ark. 128,
169 S. W. 813. See, also, *Nevill* v. *Union Trust Co.,* 111
Ark. 45, 163 S. W. 162.' "

There is no evidence of fraud in this case.

Mrs. Simpson died without having conveyed by deed
or will any of the property here involved to her husband.
She was an experienced business woman, frugal and in-

dustrious. She had inherited a small amount of property and made money from a grocery and market and from raising and selling white rats for scientific purposes and had money at the time the conveyances to her, here in question, were made.

The testimony presented by appellant from witnesses who talked to Mrs. Simpson prior to her death, tended to show that she made statements that she wanted Dr. Simpson to have all of her property at her death and wanted to make a will or deed, placing title in him. Although it appears that she was physically and mentally able, up to within a few months of her death, of so conveying the property involved to her husband, she did not do so, and there is no evidence that she was prevented from so doing. Dr. Simpson testified that he paid the taxes on the property.

In 1927, Mrs. Simpson sent a letter to her brother, Charles Thayer, appellee, in which she said that "you may save this letter if you want to—it will be same as my will—Every Thing I own at my death goes to you—Every Thing and I want you to come out here and claim same."

The Chancellor briefly summarized in the decree material testimony, from which we quote: "Plaintiff (appellant) contends that he paid the purchase price for the real estate, but that the lands were deeded to his wife for two reasons: the first being that she was afraid he would die and that his heirs would take the property from her; and the second reason being because she appreciated very much the fact that she was the record owner of the lands.

"Then, plaintiff claims that he purchased the lands with money which he earned, or from properties inherited from his father's estate. However, it is admitted that Mrs. Simpson worked and was working at the time the title to the real estate was placed in her name.

"Carrie Isadore Thayer Simpson, the wife of plaintiff and the sister of defendants, died on the 26th day of June, 1947. She wrote a letter on the 6th day of April,

1927, to her brother, one of the defendants, advising that she had continuously paid the taxes on the land as long as she worked, but after she quit work her husband let the land sell for taxes and that she sold one tract of land for Twenty-Five Hundred ($2,500) Dollars and that it took One Thousand ($1,000) Dollars of her money to redeem the lands from the tax sale.

"There was considerable testimony that Mrs. Simpson knew that she was the legal owner of the lands. Several of the neighbors testified that she expressed to them her intention to reconvey the land to her husband, but that she had been unable to get her husband to take the time off and prepare the necessary conveyances. She had been in bad health for a number of months before she died and her husband, a medical doctor, well knew her condition, but he doesn't claim to have made any effort to get legal title to the land back in himself by a deed from her. The letter aforementioned from plaintiff's wife to her brother states the letter to be her will vesting title to what property she owned in her brother. There is other correspondence indicating she had some money which she transferred from the bank to postal savings account. Then, the plaintiff testified that she was engaged in raising white rats for scientific purposes and made some money out of that enterprise. Therefore, it is not contended that Mrs. Simpson did not have money.

"Plaintiff spoke of the property as being the joint property of himself and his wife. While he does not deny willingly permitting all deeds to be made to his wife, nor does he state that she was ever present when any deed was executed and made to his wife. No question of undue influence and fraud is made in connection with the case.

"It is therefore by the court considered, ordered, adjudged and decreed that plaintiff take nothing herein; that his cause of action should be and is hereby dismissed for want of equity."

We do not attempt to detail all of the evidence. However, after a careful consideration of the record

presented, we think the testimony falls short of establishing any of the trust relationships as contended by appellant, by that degree of clearness and certainty of proof required under the rules above announced and decisions of this court.

Nor can we agree with appellant's theory of ownership of an "equitable entirety estate," and his contention that he and his wife owned the property jointly, with right of survivorship. In support of this contention he refers to the testimony of Dr. Simpson: "She thought it would come to me and if I died first she would have it. I did not think about the law—had to make a living. That was also her understanding, whichever one died first, the other was taken care of then."

He relies strongly on the case of *McCollum* v. *Price*, 213 Ark. 609, 211 S. W. 2d 895. That case, however, is clearly distinguishable on the facts. There, the husband and wife had entered into a written contract, which they both signed, for the purchase of a piece. of property wherein the terms of purchase were set out, including a provision that the owner was to convey the property to them jointly or as tenants by the entirety. There we held that since, under the terms of this contract of purchase, the vendor agreed to convey the property to the husband and wife jointly, they thereby took an equitable estate by the entirety, although the deed was made to the wife only. In the present case, there was no writing indicating joint ownership or survivorship. An estate by the entirety can be created only by a written instrument conveying to the husband and wife jointly. Mistake of the parties as to the legal effect of the deeds conveying this property to Mrs. Simpson does not vitiate them.

In *Crews* v. *Crews*, 212 Ark. 734, 207 S. W. 2d 606, we said: "While appellee testified that she thought the deed she was executing to Crews would create an estate by the entirety as to the 'home place,' it was not shown that any fraud or deception, as to the contents of the deed, was practiced on her. Mere mistake of a party as to the legal effect of an instrument does not vitiate the

instrument or afford ground for reformation." (Citing many cases).

On the whole case, finding no error, the decree is affirmed.