SIMPSON *v.* THAYER.

4-9352                              235 S. W. 2d 965

Opinion delivered January 29, 1951.

*Boyd Tackett* and *Shaver, Stewart & Jones,* for appellant.

*George E. Steel* and *E. K. Edwards,* for appellee.

PAUL WARD, J.  Appellees, Charles Thayer and Roy Thayer, are the surviving brothers and sole heirs of Carrie I. Simpson, deceased wife of appellant, Dr. W. B. Simpson.  In 1947 appellant filed suit in the Howard Chancery Court against appellees, as heirs of his deceased wife, seeking to have them declared trustees of the legal title to certain lands.  The complaint alleged that appellant paid for the lands but took title in his

wife's name under a long standing agreement between them that said lands would belong to them jointly and that she would hold the title as an estate by the entirety.

After issue was joined the cause was tried on January 5, 1948. At this trial appellant and other witnesses gave testimony tending to support the entirety theory alleged in his complaint. Several witnesses testified for appellant that Mrs. Simpson claimed no interest in the lands, but held the legal title thereto in trust and for the convenience of appellant. There was also testimony by appellant and others that on several occasions during Mrs. Simpson's last illness she expressed a desire to execute a deed or will in favor of appellant, but that this was never done.

The Chancellor entered a decree on March 8, 1948, dismissing appellant's complaint for want of equity. On appeal to this court this decree was affirmed on February 7, 1949, in *Simpson* v. *Thayer*, 214 Ark. 566, 217 S. W. 2d 354.

On April 14, 1949, appellant and appellees entered into a settlement contract which recites: "Both parties hereto desire to avoid further litigation relative to the title and ownership of the following described lands in Howard County, Arkansas, to-wit: . . ." This recital is followed by a description of all the lands involved in the original suit. Under this agreement appellant paid appellees $6,750 for full title to the home place in Nashville, Arkansas, and an undivided one-half interest in the 335 acres of farm lands. Appellees executed and delivered to appellant proper deeds in compliance with the settlement contract.

On August 29, 1949, appellant filed the instant suit to set aside the decree of March 8, 1949, and to obtain a new trial upon the ground of newly discovered evidence. The complaint in the instant case, supported by appellant's affidavit, alleged that a warranty deed was duly executed by Mrs. Simpson to appellant on September 29, 1928, and acknowledged and delivered to appellant on October 9, 1928, conveying to him two of the four prop-

erties involved in the original suit, to-wit: the 220 acre "Blackwood Place" and the "Home Lots" in Nashville, Arkansas; that said unrecorded deed was lost, but its loss was not discovered until a month after Mrs. Simpson's death on June 26, 1947; that prior to the trial of the original action, appellant made and caused to be made a diligent search for such deed without success; and that in July, 1949, appellant's niece found the lost deed while cleaning his home in Nashville.

It was further alleged that the newly discovered evidence would supply clear and convincing proof which would have produced a different result in the trial of the original cause; that such evidence was not cumulative; that plaintiff used due diligence in attempting to secure evidence of the lost deed before trial; and that such evidence could not have been discovered before the first trial by the exercise of reasonable diligence.

Appellant's affidavit attached to the complaint recites: "Said deed was lost by affiant, but its loss was not discovered until about a month after Mrs. Simpson died, her death having occurred on June 26, 1947. He made a diligent search for said deed in all places where he believed it might be found, including the place in his home where he was accumstomed to keep his deeds and papers. Furthermore, after suit was filed and prior to the trial, he called upon two of his friends to make a search for the deed. Affiant and said friends made a careful and painstaking search of the whole house, going through papers, opening envelopes, etc., but the deed could not be found. The deed never having been recorded and the Notary Public who witnessed the deed and took the acknowledgment being dead, affiant, having no proof to substantiate the fact of the execution of the supposedly lost deed, made no reference to it at the trial."

Upon a hearing in the lower court the learned Chancellor found "that the complaint in equity to set aside the Decree of this court entered in the above styled cause on March 8, 1948, and the motion for the granting of a new trial of said cause, heretofore filed herein, are

without equity and should be dismissed." From which decree comes this appeal.

Appellant contends that the decision of the lower court should be reversed and that he should be granted a new trial at which he could introduce the deed from his deceased wife to himself. In support of this contention his able attorneys advanced several arguments supported by authorities and appellees' counsel likewise has advanced many astute arguments and cited numerous authorities in support of the order of the lower court. After a careful consideration of all the reasons advanced pro and con we have decided to affirm the holding of the learned Chancellor and to rest this decision solely upon the proposition that appellant did not exercise due diligence in his efforts to locate the lost deed before the first trial of this cause on January 5, 1948. It is undisputed that Dr. Simpson on the last mentioned date, and for years before, knew of the existence of the deed. He admitted that the deed was delivered to him soon after it was executed in 1928; that the inscription on the back of the deed was in his own handwriting. His own testimony is to the effect that he made no serious effort to locate the deed until Sunday before the trial. It appears from the record that the trial began on January 5, 1948, and by reference to a calendar of that date it appears that January 5th was on Monday. He had this search made on Sunday by two neighbor women, as he was not feeling well that day and could not take part in the search.

According to his testimony the two neighbors went through a good many drawers of papers but there were three rooms in the house that had drawers with papers in them, and that his house contained nine rooms. Witness told his attorney of the existence of said deed, but no request or effort was made to obtain additional time for a thorough search. True it is that the doctor gave his reasons for not trying to rely on the lost deed at the first trial, but also stated that he wanted to try to get the title through testimony of witnesses his wife talked to and that he thought he had sufficient evidence. This

decision would naturally lead to the conclusion that Dr. Simpson did not lay great importance on the necessity of finding the lost deed and lends support to the contention of appellees that he did not deem it necessary to make a thorough search.

Appellant had his day in court in January of 1948, and the decision against him then was affirmed later by this court. The solemnity of a judgment under such circumstances and especially after the lapse of more than a year is such that the judgment should not be reopened on the ground of newly discovered evidence unless the right to do so is well established. It is our opinion that the evidence of due diligence on the part of appellant does not justify a reopening of this case.

Affirmed.

Justices McFADDIN and MILLWEE concur.