DAVID MORTON *versus* CHARLES E. BARRETT & *als.*

22 257
92 182

Where the testator, in his will, devises certain estate to a trustee, and directs that the income shall be paid to a son during life, and that on the son's death the principal shall be paid to certain other persons ; the death of the son prior to the death of the testator, does not prevent the devise over from being effectual.

Where the trustee cannot perform the duties imposed upon him by the will without having a legal title in the property devised to him in trust, he will be considered as taking the legal title.

If it clearly appears from the will, that the word *heir*, as used therein, means *heir apparent*, it will be so considered in giving a construction to it.

That the intention of the testator should be carried into effect, is the great and governing guide for the construction of wills ; and the true interpretation of any one clause, is to be sought by considering it in connexion with all the others, and by an examination of the main designs of the testator, as manifested by the whole instrument.

And, therefore, where such general intent clearly appears, it should be carried into effect, although it should require some departure from a literal construction of a particular clause.

Where a controversy existed among the claimants of a trust fund, both as to the persons entitled to receive it, and the respective proportions thereof; and a bill in equity was brought by one claimant against the trustee and other claimants, such trustee is entitled to be paid from the fund, in addition to compensation for care of the property, the expenses by him necessarily incurred in defending the suit.

THIS was a bill in equity instituted by David Morton against Charles E. Barrett, trustee under the last will and testament of Reuben Morton late of Portland, deceased, Samuel Hanson, guardian of his three children who were also children of his late wife, Statira, now deceased, the daughter of said Reuben Morton, and James Furbish, guardian of the two children of his late deceased wife, who was the other daughter of said testator.

The decision of this controversy depended on the construction to be given to the fourth provision of the will of said Morton, bearing date July 27, 1831, and the same subject matter in the codicil to that will, bearing date December 9, 1836.

A copy of this portion of the Will and codicil follows : —

" Fourthly. I give, bequeath and devise to my friend Albert

Newhall in trust, or in case of his declining, I give, bequeath and devise to such Trustee, as may hereafter be legally appointed for this purpose by any Judge of probate in said County of Cumberland, in trust, with power to said Newhall, or any trustee to be so appointed, to sell and convey in fee or otherwise at the discretion of either of them, subject however to the proportion of one seventh of the legacies aforesaid to my beloved wife, during her natural life, one undivided seventh part of my estate, real and personal, allowing however, to make up the said seventh, the balance of the charges made on my books of account, against my eldest son, Charles D. Morton, which amount to three thousand six hundred fifty-two dollars and ninety cents, which have been made, as I now declare the same to be, in advancement of part of his portion or share of my estate, and also such sums as may hereafter be charged against him on my books for the same purpose.

"The proceeds of said seventh, after said allowances, to be held in trust, and vested as soon as may be, in good bank stock of the United States Bank, or banks within the New England States, or kept at interest on good security; and the income or interest thereof to be invested from time to time, in like stocks annually, excepting that in case the annual interest thereof should amount to three hundred dollars, clear of the expenses of managing the fund, said trustee is to apply according to his discretion, the sum of three hundred dollars, annually towards the support and maintenance of my said son Charles D. Morton, in quarter yearly payments, for and during his natural life and no longer. And should that interest be less than three hundred dollars annually, no more than that lessened interest, clear of said expenses, is to be appropriated in manner aforesaid for the support and maintenance of my said son, Charles D. Morton, annually, nor is he, in any event, to have or receive the principal. But said trustee, after the death of said Charles, is to pay the principal or so much thereof as may remain, and the accumulated interest thereof, over equally to be divided to the rest of my heirs, who may be living at the

time of the decease of said Charles, exclusive of his wife, and any child or children which she has, or may have."

The provision of the codicil is :—

"Thirdly.   I give, bequeath and devise, to my friend Albert Newhall, Esq. in trust, and in case of his declining, I give, bequeath and devise to such trustee as may be appointed by any Judge of Probate in said County of Cumberland, and in trust, such portion of my estate, real and personal, as shall be equal to one fifth part thereof, allowing however, to make up said fifth part, the charges on my books of account, against my son, Charles D. Morton, as is contemplated and directed in my said last will and testament, with the powers to said trustee, as given in said last will and testament.   The proceeds of said fifth part, if converted into money, to be held also in trust and invested as in my said last will and testament is directed in the bequest therein made for the benefit and use of said Charles. And the income thereof to be applied in amount and manner as in my said last will and testament is directed for the support and maintenance of said Charles.   And the balance of income, if any, and the balance of principal remaining at the decease of said Charles, to be applied as is ordered and directed in my said last will and testament."

The other provisions in the will, and the facts relative to the devisees and legatees, bearing upon the present enquiry, are given in the opinion of the Court.

At the April term, 1842, the questions were very fully argued by counsel.  The arguments are much too extended for publication.

*F. O. J. Smith,* for the plaintiff, in a printed argument, contended that David and Stephen Morton, the only children of the testator, surviving on the death of Charles, not excluded by the will, were alone entitled to this estate, to be divided equally between them.   In his argument he cited 1 Ventris, 231 ; 2 Burr. 1112 ; 2 Wils. 322 ; Willes, 297 ; *Hayden* v. *Stoughton,* 5 Pick. 530 ; *Olney* v. *Hull,* 21 Pick. 313 ; 3 P. Wms. 259 ; 2 Ves. Senr. 74 ; 1 Ves. Jr. 384 ; 4 Kent's Com. 524; *Brown* v. *Porter,* 4 Pick. 209 ; 4 Kent, 204 ;

Prec. Ch. 316 ; 1 Eq. Ca. Abr. 245 ; 1 Cowper, 41 ; 2 Powell on Dev. 311 ; 2 Atk. 321 ; Perkins, Title, Devises, § 506, 507 ; 1 Salk. 229 ; 1 Ves. Senr. 421 ; Doug. 63 ; 3 Atk. 330 ; 5 Vin. Abr. 343 ; 1 Atk. 361 ; 1 Cox, 183 ; 15 Ves. 29 ; 1 Ves. & Bea. 124 ; Dougl. 504 ; 3 Binney, 161 ; *Bowers v. Porter*, 4 Pick. 209 ; Fort. 182 ; 8 Mod. R. 222 ; 1 P. Wms. 341 ; Gilb. Eq. 136 ; 3 Call, 289 ; 11 East, 558, and note ; 3 Yeates, 33 ; 1 Wash. 53 ; 7 Ves. 455 ; 7 East, 272 ; 2 B. & A. 441 ; 10 Ves. 202 ; 1 Meriv. 320 ; 4 Madd. 67 ; 3 Bro. C. 401 ; 4 Ves. 692 ; 5 Bin. 601 ; 2 Vern. 107 ; 1 P. Wms. 229 ; 2 W. Black. 1010 ; Roberts on Wills, § 4 ; 1 Ambler, 273.

*Preble*, for Hanson, in an oral argument, contended that the portion of the estate now in question should be divided equally between the three children of the late Mrs. Hanson, who was Statira, the eldest daughter of the testator, the two children of the late Mrs. Furbish, who was the youngest daughter of the testator, and David and Stephen Morton, sons of the testator, giving to each of them one seventh part.

*Longfellow, Senr.* and *Longfellow, Jr.* for Furbish, also contended, in a written argument, that the five grandchildren and two sons of the testator, before named, were entitled to the fund in the hands of the trustee, to be divided between them in equal shares. They cited Plowden, 343, 413 ; Willes, 294 ; 4 Kent, 534 ; Cro. Car. 184 ; 3 Atk. 315 ; 6 East, 486 ; 7 T. R. 437 ; 1 Wash. 262 ; 4 Pick. 518 ; Ambler, 487 ; 1 Williams, 398 ; 11 East, 332 ; 13 East, 362 ; 3 Atk. 375 ; 20 Pick. 378 ; Toller's Ex. 304 ; 2 Fonb. 363 ; 1 Ves. 116, 140 ; 2 Ves. 463 ; 2 Vesey, Jr. 333, 529 ; 2 Williams, 194 ; 4 Kent, 263 ; 21 Pick. 313 ; 2 Cowp. 780 ; 3 Burr. 1881 ; 1 Cowp. 309 ; 3 East, 278 ; 1 Dougl. 264 ; 1 Johns. R. 61 ; Com. Dig. Devise, 4 ; 4 Dane, 590, § 6 ; 4 East, 498 ; 4 Pick. 210.

*Adams*, for Barrett, said that the trustee was desirous of giving up the fund in his hands to such as were legally entitled to it. It had been intimated by the counsel for the plaintiff, that the fund was not to be charged with the expense attend-

ing the care of it.   He is not only entitled to be paid from it those expenses, but the expense attending his being brought into Court in this suit.   1 Bailey, 230; *Sawyer* v. *Baldwin,* 20 Pick. 388.

The trustee only asks to be protected, and wishes it to be directed to be paid to those legally entitled to it.   But as Charles D. Morton died before the testator, it is believed that the share in controversy became lapsed, and went to the heirs at law of the testator, as intestate estate.   In that case it would be divided into five shares ; of which the two surviving sons would be entitled to a share each ; the three children of Statira to one share ; the two children of Nancy to one share ; and the son of Charles D. Morton to the other fifth part.   He cited 13 East, 532 ; *Hayden* v. *Stoughton,* 5 Pick. 538 ; 4 Dane, 579, § 6 ; *Fisher* v. *Hill,* 7 Mass. R. 86.

The opinion of the Court was delivered at an adjourned term in this county, in March, 1844, by

SHEPLEY J. — It appears from the bill, answers and proof, that Reuben Morton made and executed his will on July 27, 1831, having at that time a wife and seven children.   He made provision for his wife, and gave to four of his children, Statira, Nancy, David and Christopher, one undivided seventh part of the residue of his real and personal estate.   He gave to a trustee in trust three other sevenths.   All these portions were to be ascertained by charging each child with advances made or to be made.   The income of one seventh, given in trust, was to be applied to the support of his son Stephen and wife and their son under certain regulations ; and two thousand dollars of the principal was on certain contingencies to be paid to that son, and the remainder, after the decease of Stephen and his wife, was to be paid to Statira, Nancy, David, and Christopher.   The income of another seventh, given in trust, was to be applied to the support of his son Ebenezer, and the principal might be paid to him on certain conditions ; but in case of his death within a certain time, it was also to be paid to Statira, Nancy, David and Christopher.   The in-

come of the other seventh given in trust, not to exceed three hundred dollars annually, was to be applied to the support of his son Charles during his life, and after his death the principal, with any accumulated interest, was, in the language of the testator, " equally to be divided to the rest of my heirs, who may be living at the time of the decease of said Charles exclusive of his wife and any child or children, which she has or may have."

On the ninth day of December, 1836, the testator made and executed a codicil, which recites, that since his will was made his wife had died, that his sons Ebenezer and Christopher had died without leaving issue, and that his daughters Statira and Nancy had died, each leaving children. After giving certain specific legacies the remainder of the estate is divided into five instead of seven parts. Of these one fifth is given to the children of Statira, one fifth to the children of Nancy, one fifth to a trustee in trust to apply the income to the support of Charles as directed in the will, and the principal with the accumulated income " remaining at the decease of said Charles, to be applied as is ordered and directed in my said last will and testament ;" another fifth to a trustee to apply the income to the support of his son Stephen and wife and their son, and the whole of the principal, instead of two thousand dollars of it, was directed to be paid to their son, if he should live to be twenty-one years of age, and be in the opinion of the trustee capable of using it with discretion. And the other fifth in trust for the benefit of his son David.

The testator died on June 22, 1838, and his son Charles on February 3, 1837. The trustee named in the will declined the trust ; and the defendant, Barrett, was appointed trustee by the court of probate. The disposition of that fifth of the estate, which was to be disposed of on the death of Charles, is now presented for consideration.

It is contended by the counsel for the trustee, that, as the son died before the testator, this fifth must be regarded as a lapsed devise and legacy. This cannot be admitted, for it was not devised to the son. He was not in any event to re-

ceive the principal. That was given in trust for the benefit of others. The devise of the real estate was to the trustee with authority to sell and convey it in fee or otherwise, and to invest the proceeds in stock. The income only could be affected by the death of Charles. If the principal had been given to Charles, as there was a devise of it over upon the event of his death, the happening of that event during the life of the testator would not have prevented the devise over from being effectual. *Counden* v. *Clark*, Hob. 29. *Gulliver* v. *Wickett*, 1 Wil. 106; *Willing* v. *Baine*, 3 P. Wms. 113; *Miller* v. *Warren*, 2 Vern. 207; *Humphreys* v. *Howse*, 1 Russ. & Myl. 639; *Walker* v. *Main*, 1 Jac. & Wal. 1. There was no contingent interest in this fifth undisposed of by the will, and no part of it could therefore pass under the devise of the residue of the estate.

It is contended by the counsel for the plaintiff, that those entitled to this portion became so on the death of Charles; that the purpose of creating the trust, having been defeated by his death, the estate never passed to the trustee, but vested in them. But this portion is not devised to others on the death of Charles. They are to receive the proceeds only by virtue of the directions given to the trustee, and through him in the execution of his trust. He could not have performed the duties imposed upon him by the will without having a legal title in the property devised to him. And when it becomes necessary, that the title should be vested in a trustee to enable him to execute the declared purposes of the will, he will be considered as taking the legal title. *Silvester* v. *Wilson*, 2 T. R. 444; *Harton* v. *Harton*, 7 T. R. 652; *Sanford* v. *Taby*, 3 B. & A. 654; *Murthwaite* v. *Jenkinson*, 2 B. & C. 358; *Doe* v. *Nicholls*, 1 B. & C. 336; *Tenney* v. *Moody*, 3 Bing. 3; *Huston* v. *Hughes*, 6 B. & C. 403; *Wykham* v. *Wykham*, 18 Ves. 414; *Biscoe* v. *Perkins*, 1 V. & B. 489. As the son died first, the testator at that time, technically speaking, had no heirs. But the rule *nemo est haeres viventis* does not apply, when it is apparent from the will, who were intended by the testator to be the recipients of his bounty. A devise to the

heirs male of E. L., and in default of such issue, to the testator's own right heirs. E. L. being alive at the time of the testator's death, technically speaking, had no heirs, and yet it was decided, that the son of E. L. took the estate. *Darbison* v. *Beaument*, 3 Bro. P. C. 60. Other cases, fully sustaining the position stated, are cited and commented upon in the case of *Doe* v. *Perratt*, 5 B. & C. 48. In that case Mr. Justice Littledale states the settled doctrine to be, "that if there be sufficient upon the will to shew, that the word heir is used in the will in such a way, as proves the testator to have meant heir apparent, it shall be so considered, as he intended it." Mr. Justice Holroyd also says, " if it appeared therefore plainly by the will to have been the testator's intention, that an heir male apparent should take by the devise, I agree that the rules of law would not prevent the giving such a construction to the will as to carry that intent into effect." Mr. Justice Bayley also observes, that the rule, that to enable one to take under a will by purchase, he must be truly an heir, " never has prevailed, where it is evident upon the *instrument* containing the limitation, that the presumptive heir male was the person intended." To carry into effect the intention of the testator, the word heirs should be construed to mean heirs apparent, or children, or those entitled under statutes of distribution. *James* v. *Richardson*, 2 Lev. 232 ; *Nightingale* v. *Quartley*, 1 T. R. 630 ; *Goodright* v. *White*, 2 W. Bl. 1010 ;. *Carne* v. *Roch*, 7 Bing. 226 ; *Hart* v. *Hart*, 2 Desau. 57 ; *Brailsford* v. *Hayward*, 2 Desau. 18 ; *M' Cobe* v. *Spruil*, Dev. Eq. Rep. 18. To declare the devise to be inoperative and void, because the testator had, technically speaking, no heirs at the time, when Charles died, would be to defeat some of the clearest intentions of the testator, exhibited both in the will and codicil, viz. that all his property should be disposed of by the will, and that the children of Charles should not by devise or otherwise be entitled to any benefit from it. .

Considering the property as devised by the will, the question arises, who are the persons entitled to this fifth now in the hands of the trustee ; and in what proportions are they entitled. The word heirs could not have been used by the testator in the

clause of the will providing for a distribution of it, in a technical sense, or as designating his children, or those persons, who would become his heirs at law upon his decease. For under the term heirs the testator appears to have supposed, that the wife of Charles would be included, who could in no event become his heir. And her children, and others not then in being, who would become heirs of the testator only by the death of their father during his life. It would seem to have been used in a sense unusual, and as comprehending all those persons, who might be benefited by the estate, if he should die intestate, either directly or intermediately. That the word was used in this enlarged sense is proved by the careful exclusion of those, who could be included only by such a use of it. And yet if this be the sense, in which that word was used, that clause of the will does not admit of a literal interpretation; for the result would be, that all the persons not excluded, who could be thus benefited, and should be alive at the death of Charles, would be entitled to equal shares of it. And this would be contrary to the intention of the testator, manifested in various clauses of the will, as well as contrary to its general purport and spirit. A literal construction of the clause becomes therefore inadmissible, if the intention of the testator be carried into effect. And that is the great and governing guide for the construction of wills. The true interpretation of the clause must be sought by considering it in connexion with various others; and by an examination of the main designs of the testator as manifested by the whole instrument. These designs will be found to be not obscurely expressed or exhibited. That it was his intention by the original will to give an equal share of his estate to four of his children is undeniable. He not only gives to those four an equal share, but gives to them also equally two other shares on certain contingencies. And makes them residuary devisees and legatees in equal proportions. Before the codicil was made, three of those four had deceased, one of them without, and the other two leaving children. The same purpose is still manifested so far as it was possible to execute it; and provision is made, that the children

of those deceased should receive the share designed for the parent. This design, that the children should take the share destined for the parent, where death or considerations of prudence did not interpose, is further manifested in that clause of the codicil, which directs the trustee to pay to his grandson, the son of Stephen, on certain contingencies an equal portion of his estate. A slight change is made in the share of David, which is put in trust to become his on certain conditions. Four fifths of the estate under certain regulations are divided equally among four children or their children taking according to the right of representation. And there is no intimation in any part of the will or codicil of an intention, that the equality among those, who took a full share, so carefully observed in all other cases, should be departed from in the distribution of this fifth. If such be the clear intention, it should be carried into effect, although it should require some departure from a literal construction of the clause. No great departure from such a construction however, is believed to be necessary for this purpose. In the argument presented by the counsel for the plaintiff respecting the construction of this clause, it is said, that the testator " was not referring to any persons, who might become his heirs ; but to those, who then were, and who should continue to be so up to an appointed juncture, viz. the death of Charles." · But. this reasoning is at variance with that part of the clause, which excludes as a part of his heirs, the child of Charles then living as well as other children, that might thereafter be born. It is also said these words, " the rest of, " are evidently words of contrast and of reference. They refer to certain individuals of a particular class and relation to the testator, viz. to some, who should be living at Charles' death ; and toey contrast these individuals, who were once of the same particular class, but who at the death of Charles had by his death ceased to be of that class and that relation to himself." The words appear however to have been used, not to distinguish those, who should remain alive from those who should decease, but to distinguish those who might be entitled to the bounty of the testator from those excluded from it. The

meaning being, the rest of my heirs, after excluding certain persons named. Those not excluded by name are again diminished by selecting those as recipients of the bounty, who should survive Charles. The sense of the testator may perhaps be best explained by reading the clause thus, "equally to be divided to the rest exclusive of his wife and any child or children, which she has or may have, who may be living (and be) of my heirs at the time of the decease of said Charles." This transposes and employs all the words in such a manner as to give them all effect. And the two words inserted as explanatory can scarcely be required for that purpose. The idea in the mind of the testator would seem to have been, that he would distribute that share on the death of his son Charles equally among those members of his family, who might be then living and entitled as his heirs to receive it, excluding the persons named. Upon this construction, or upon one producing a like result, it is contended by the counsel for the children of the deceased daughters, that the grandchildren, being then heirs at law, took equal shares with the surviving children. To come to such a conclusion it is necessary to return again to a technical use and sense of the word heirs, which has necessarily been abandoned to enable the grandchildren to be admitted at all to participate in the distribution of this share. And when it was employed as above to represent in part the idea in the mind of the testator, he was not supposed to have used it in a technical sense, but as comprehending those of his family, who might be entitled to benefits by a distribution of his estate. This construction prevents their exclusion, and it is necessary for that purpose; and they cannot reject it, and claim strictly as heirs to the grandfather. They are entitled then not technically as heirs, but as being a part of the family of the testator designated by the use of that term; and not among those named and excluded; and the manner, in which they are to take under the will, is not determined by the use of the word heirs, but is to be ascertained from the will itself, taking into consideration its various provisions. That intention has been already shewn to be to make an equal distribution be-

tween certain of his children, and to continue it to their children as representing them. The intention appears to be clear, that the grandchildren should neither be benefited nor injured in this respect by the decease of their parents, but should take the shares, to which their parents would have been entitled, had they been alive. To decide, that each grandchild should take a proportion equal to a child, would be contrary to the design and spirit exhibited throughout the whole will and codicil. And it could only be justified by some peremptory rule of law, or technical use of language. These have not been found.

The conclusion is, that the trustee, after deducting such reasonable charges and expenses, as are allowed in the Probate Court in like cases of trust, and the expenses by him necessarily incurred in defending this suit, convey and pay over the residue of this fifth part of the estate, in equal proportions, to David Morton, to Stephen Morton, and to the guardians respectively of the children of Statira, and of Nancy. A decree is to be entered accordingly, and without costs.