## COX ET AL. VS. BRITT ET AL.

A clerical mistake in a will may well be corrected to give effect to the manifest intention of the testator as collected from the context.

The rule that where two parts of a will are totally irreconcilable, the latter overthrows the former, is never to be resorted to except for the purpose of escaping total inconsistency.

A bequest by a mother to her daughter, Nancy Johnson, "during her natural life, and then to be equally divided between the children of the said Nancy Johnson. To have and to hold the same to her, the said Nancy Johnson, her heirs, executors, administrators and assigns to her and her use and behoof forever," *held* to be a bequest to the daughter for life with remainder to her children.

The statute of limitations does not begin to run against a remainder man until the death of the tenant for life.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. LEN. B. GREEN, Circuit Judge.

GARLAND and GALLAGHER for the appellants.

It was clearly the intention of the testatrix to give to her daughter only a life estate in the property in dispute ; and that after death the property should go to her children. And according to the recognized construction of wills, the latter clause of the bequest in this case which, probably, was unintelligible to the testatrix, will not be allowed to defeat her manifest intention. *Sims vs. Doughty*, 5 *Ves. Jr.* 246, *notes*; *Covenhaven vs. Shuler* 2 *Paige* 130; *Jesson vs. Wright* 2 *Bligh's Rep.* 56; *Bartlett vs. King*, 12 *Mass.* 537; 1 *Mann.* 99; *Morton vs. Barrett* 22 *Maine Rep.* ; 3 *How. U. S. R.* 464; 9 *Paige* 122; 6 *Gratt.* 456; 10 *Paige* 152; 3 *Cush.* 472.

HEMPSTEAD, for the appellees.

That, according to the terms of the bequest, the legacy vested in Nancy Johnson is proved by the following authorities. *Jones vs. Morgan* 13 *Geo.* 515; *U. S. Dig. vol.* 14 *p.* 591, *Sec.* 4; *Willards' Eq.* 522, *Sec.* 8; 11 *Wend.* 267; 5 *Mass.* 500.

Where there are repugnant clauses in a will, the latter should prevail. *Adee vs. Cornwell* 3 *Mon.* 279; *Hunt vs. Johnson B. Mon.* 334—*Ky. Dig.* 988.

FLANAGIN, also for appellees.

Mr. Justice COMPTON delivered the opinion of the court.

On the 13th November, 1841, Sarah Walker, then living in North Carolina and being the owner of certain negro slaves, made a will, by which, as is insisted for the appellants, she devised said slaves to her daughter Nancy Johnson—then the wife of Larkin Johnson—for life, with remainder to the children of the said Nancy. After the decease of Mrs. Walker, her will was duly admitted to probate in North Carolina, and Larkin Johnson who was appointed executor thereof, qualified as such, and took possession of the slaves. Sometime in the year 1849, he, with his wife and their children, and most of the slaves, moved to Arkansas. After his arrival in Arkansas, he, on the 2d September, 1854, sold one of the slaves, his wife joining him in the bill of sale. In October 1854, his wife died, and after her death the remaining slaves were sold, most of them, under execution at the suit of his creditors.

The bill was filed on the 13th March 1857, to recover the slaves, or their value, and their reasonable hire, and to have distribution thereof among the children of Mrs. Johnson. The chancellor being of opinion, on the final hearing, that there was no equity in the bill, dismissed it; and from his decision the complainants have prosecuted their appeal to this court.

For the appellants it is insisted that Mrs. Johnson took but a life estate in the slaves, with remainder over to her children; while for the appellees it is contended that she took the whole

estate. This involves a construction of Mrs. Walker's will, and inasmuch as the unskilfulness of the draughtsman in the use of language has some bearing on the question presented, we deem it proper to quote not only that part of the will out of which the question arises, but also so much of it as relates to the disposition of the entire estate of the testatrix ; which is as follows :

"And my will is, first ; that after my decease my body shall be decently buried, without *extortion* or unnecessary expense, and that my funeral and just debts shall be paid by my executor hereinafter named; and as to the residue of my estate and property with which God has blessed me with, and which shall not be required for the payment of my debts, funeral charges, and the expenses of the administrator of my estate, I give and devise unto my grand daughter, Martha Johnson, one bed and furniture, one cow and calf. I give and bequeath to my beloved daughter Nancy Johnson, all the rest and residue of my estate, real and personal or mixed of which I shall be seized of, or possessed of, or to which I shall be entitled to at the time of my decease, during my natural life, and then to be equally divided between the children of the said Nancy Johnson. To have and to hold the same to her, the said Nancy Johnson, her heirs, executors, administrators and assigns to her and her use and behoof forever."

The word " my" occurring in the above quotation before the words " natural life," was doubtless a mere clerical mistake, and to give effect to the manifest intention of the testatrix as collected from the context, must be read *her*. 1 *Jarman on Wills* *Chap. XVII*; *Keith vs. Perry* 1 *Dessaus.* 353 ; *Bowers vs. Porter* 4 *Pick.* 198. But the main argument is, that the limitation of the remainder to the children, being immediately followed by the words " To have and to hold the same to her the said Nancy Johnson, her heirs, executors, administrators and assigns forever," etc., is controled by these latter words, and can have no effect, according to the rule laid down in the cases cited by the counsel for the appellees, that where two parts of a will are to-

tally irreconcilable, the latter overrules the former. Far from being satisfactory in itself, as shown by some of the cases in which it has been applied, this rule is never to be resorted to, except for the purpose of escaping total inconsistency. The court in *Covenhaven vs Shuler* 2 *Paige* 130, remarking upon this rule said : " It is only applied in those cases where the intention of the testator cannot be discovered, and where the two provisions are so totally inconsistent that it is impossible for them to coincide with each other, or with the general intention of the testator. The great and leading principle in the construction of wills is, that the intention of the testator, if not inconsistent with the rules of law, shall govern ; and that intent must be ascertained from the whole will taken together; and no part thereof to which meaning and operation can be given, consistent with the general intention of the testator, shall be rejected. Where the words of one part of a will are capable of a twofold construction, that should be adopted which is most consistent with the intention of the testator, as ascertained by other provisions in the will. And where the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words. The strict grammatical sense is not always regarded, but the words of the will may be transposed to make a limitation sensible, or to carry into effect the general intent of the testator." So in *Jesson vs. Wright*, 2 *Bligh's Rep.* 56, Lord Redesdale said : " It cannot at this day be argued that because the testator uses in one part of his will words having a clear meaning in law, and in another part other words inconsistent with the former, that the first words are to be cancelled or overthrown." To the same effect are the remarks of Mr. Jarman, in his work on wills, *Vol.* 1 *Marg. pg.* 420. He says : " It is clear, however, that words and passages in a will which are irreconcilable with the general context, may be rejected, whatever may be the local position which they happen to occupy, for the rule which gives effect to the posterior of several inconsistent clauses, must not be so applied as in any degree to clash or interfere with the doctrine which teaches us to look for

the intention of the testator in the general tenor of the instrument"—citing *Boon vs. Conforth*, 2 *Ves. sr.* 576; *Elton vs. Stenlake* 12 *East* 515, *Smith vs. Pybus* 9 *Ves.* 556. See also, *Lane vs. Vick* 3 *How. U. S.* 472; *Morton vs. Barrett* 22 *Maine* 257; *Lucas & wife vs. Duffield* 6 *Grat.* 456. And where the intention of the testator clearly appears from the context, the courts, in order to effectuate that intention, have not hesitated to change the language of the testator. *Ellis vs. The Proprietors of Essex Merrimack Bridge* 2 *Pick.* 243; *Keith vs. Perry*, 1 *Dessaus.* 357; *Morton vs Barrett* 22 *Maine* 257; 1 *Jarman on Wills, Ch. XVII p.* 417. Testing the will in the case before us by an application of these principles, we hold that the children of Mrs. Johnson as remaindermen, are entitled to the slaves in controversy. The total inconsistency contended for is found in one and the same clause—the latter part of the clause seeming to be irreconcilable with the former. We think, however, taking the intention of the testatrix as a guide, that there is no real inconsistency. The language employed in the first part of the clause, limiting the remainder to the children, was clear and explicit, was adapted to the commonest understanding, and was doubtless well understood by the testatrix. But that employed in the latter part of the clause, immediately following, was, in substance, such as is used in the *habendum* or formal clause, ordinarily inserted in deeds of conveyance—it was technical language, inappropriately and unskilfully used, the legal meaning of which it may be supposed was unknown both to the testatrix and the draughtsman. Inasmuch as, in common parlance, the word *heirs* is often inaccurately used to designate children, it might be inferred that the language was employed with the view of completing, but not changing, that which was done by the former part of the clause—though, most likely, it was used as mere matter of form, unintelligible to the testatrix, and to which she attached no definite meaning. To suppose that the testatrix, after giving to the children, in language too plain to admit of construction, an interest in the slaves, meant to deprive them of that interest by the use of the technical phraseo-

gy—to her a mere form of words—immediately following, without so much as expressly mentioning or referring to the children, would be most unreasonable. We cannot hold that such was her meaning. On the contrary, consistently with what seems to have been the intention of the testatrix, we reject the latter part of the clause in question as incongruous words, serving only to embarrass the plain provision with which they are connected.

As to the argument touching the statute of limitation, it is only necessary to remark, that the bill was filed within less than five years after the death of Mrs. Johnson, and that until she died, the statute did not begin to run—the appellants having no right of action until then.

Let the decree be reversed and the cause remanded to be proceeded in according to law.