SHELTERING ARMS HOSPITAL OF RICHMOND, VIRGINIA *v.* SHINEBERGER.

4-6145 146 S. W. 2d 921

Opinion delivered January 27, 1941.

*Louis S. Herrink, Littleton M. Wickham* and *H. Jordan Monk,* for appellants.

*Arthur F. Triplett* and *Stephen H. Simes,* for appellee.

McHaney, J. In November, 1934, A. E. Sheppard, a resident of the state of Virginia, died testate in that state. He died the fee simple owner of an undivided one-third interest in and to certain lands in Jefferson county, Arkansas, known as the Sheppard Island Plantation, hereinafter referred to as the Plantation. His will was duly admitted to probate and filed for record in Jefferson county. The appellants are three charitable organizations in Virginia, the Sheltering Arms Hospital, Virginia Home for Incurables and the Protestant Episcopal Church Home for Old Women, and J. K. Rader, administrator, d. b. n. c. t. a. of the will of said A. E. Sheppard.

We think it unnecessary to a full and complete understanding of the case to set out the various pleadings of the parties, further than to say the action was instituted by Rader, the administrator and appellee against the three named charities and certain others who did not answer and have no interest in this controversy to have the will of A. E. Sheppard construed. The appellee was permitted to withdraw as a party plaintiff and be substituted as a defendant, and she thereafter filed an answer

claiming to be the owner of the one-third interest of A. E. Sheppard in said plantation by virtue of art. 13 of his will and the will of A. B. Guigon, Jr., deceased, who, it is alleged, took the fee simple title thereto under said art. 13 of A. E. Sheppard's will. The three appellants, the Charities, answered, controverting the claim of appellee and asserting that said A. B. Guigon, Jr., took only a life estate in said plantation under the A. E. Sheppard will, and that they took the remainder interest in fee.

Trial resulted in a decree sustaining the contention of appellee, that is, that A. B. Guigon, Jr., took the one-third interest of A. E. Sheppard in fee under said art. 13, which passed to her, his half sister, under the will of said Guigon, which gave her a two-thirds interest in the plantation, because she was already the fee owner of a one-third interest therein, and this appeal followed.

The pertinent parts of A. E. Sheppard's will are as follows: Article 8. "I give and devise to my nephew, A. B. Guigon, Jr., to be his in fee simple, lot 6 of block 5, Highlands Subdivision to Stuart, Florida, according to revised plat filed of record and recorded in plat book 10, page 59, records of Palm Beach county, Florida, being the same piece or parcel of real estate conveyed to me by deed from the said A. B. Guigon, Jr., dated May 31, 1927; and recorded in the clerk's office of Martin county, Florida, in deed book 17, page 129; and I also give and devise to my said nephew to be his in fee simple, lot 9 of block 5, Highlands Subdivision to Stuart, Florida, as recorded in the office of the clerk of the circuit court of Palm Beach county, Florida, as recorded in plat book 9, page 70, being the same piece or parcel of land conveyed to me by deed from the said A. B. Guigon, Jr., dated May 31, 1927, and recorded in the clerk's office of Martin county, Fla., in deed book 17, p. 130."

Article 13. "I give and devise to State-Planters Bank & Trust Company, trustee for my nephew, A. B. Guigon, Jr., all of my right, title and interest in and to certain real estate situated in the state of Arkansas, Jefferson county, and known as the 'Sheppard Island Place.'"

Article 18. "After the payment of my just debts, funeral expenses and costs of administration, and after the payment of the above mentioned legacies, as hereinbefore set forth, and after the distribution of the other legacies hereinbefore provided, I give, devise and bequeath all of the rest, residue and remainder of my property, real and personal, wheresoever situated and howsoever held, to the State-Planters Bank & Trust Company of Richmond, Virginia, to be held by it as a trust fund in trust for my said nephew, A. B. Guigon, Jr., the income therefrom and the income from the property mentioned in art. 13 hereof, to be paid to my said nephew, A. B. Guigon, Jr., during his lifetime, said income to be such as shall begin to accrue from the date of my death. Upon the death of my nephew, A. B. Guigon, Jr., the principal of said trust estate shall be paid over to his issue, if any, living at the time of his death, such issue, however, to take *per stirpes* and not *per capita*. Should my said nephew, A. B. Guigon, Jr., die leaving no issue surviving, but leaving a wife surviving him, then after his death the income from said trust fund shall be paid to his wife during her lifetime.

"In the event my said nephew, A. B. Guigon, Jr., shall die leaving no wife or issue surviving him, then upon his death this trust shall terminate and the corpus or principal of said trust fund shall be disposed of as follows:

"In the event said corpus or principal of said trust fund shall be less than the sum of two thousand dollars ($2,000), then in that event one-half of said corpus or principal shall be paid over to the Sheltering Arms Hospital of Richmond, Virginia, for the use of the 'Kate Empie Guigon Memorial Fund,' and the remaining one-half of said corpus or principal of said trust fund shall be paid over in equal shares to the Sheltering Arms Hospital of Richmond, Virginia, the Virginia Home for Incurables of Richmond, Virginia, and the Protestant Episcopal Church Home for Old Women of Richmond, Virginia. Should, however, said corpus or principal of said trust equal or exceed the sum of two thousand dollars ($2,000), then in that event the sum of one thousand dol-

lars ($1,000) shall be paid over to the Sheltering Arms Hospital of Richmond, Virginia, for the use of the 'Kate Empie Guigon Memorial Fund' and the remaining residue of said trust fund shall be paid over in equal shares to the Sheltering Arms Hospital of Richmond, Virginia, the Virginia Home for Incurables of Richmond, Virginia, and the Protestant Episcopal Church Home for Old Women of Richmond, Virginia; but provided, however, that if at that time the Sheltering Arms Hospital has ceased to be a free hospital then it shall not receive any of said trust fund, but all of said trust fund shall go to the said Virginia Home for Incurables and said the Protestant Episcopal Church Home for Old Women.

"In the event my said nephew decides to retain his interest (being an 8/30 interest) in the farm in Henrico county, Virginia, known as 'Ethelwood' as a home, then so long as my said nephew shall retain the said interest as a home, I direct my trustee also to retain my interest in said farm (being the remaining 22/30 interest therein) and to allow my said nephew the free use and enjoyment of said farm and home as long as he retains his interest, but should my said nephew sell or neglect to properly care for said interest or any portion thereof he shall no longer be allowed the use and enjoyment of my 22/30 interest. I further direct that no timber shall be sold or cut from the said 'Ethelwood Farm' after my death, unless my said trustee shall deem it wise and proper to cut and remove such timber in the interest of the corpus of my estate and upon the sale of such timber, if any, the proceeds therefrom shall constitute a part of the corpus of my estate.

"Should my said nephew, A. B. Guigon, Jr., predecease me, then I direct that the trust fund or funds provided for him in this my will shall be distributed as follows:

"1. The sum of one thousand dollars ($1,000) shall be paid over to the Sheltering Arms Hospital, of Richmond, Virginia, for the use of the 'Kate Empie Guigon Memorial Fund.'

"2. The residue of said trust fund shall be paid over in equal shares to the Sheltering Arms Hospital

of Richmond, Virginia; the Virginia Home for Incurables of Richmond, Virginia; and the Protestant Episcopal Church Home for Old Women of Richmond, Virginia; but provided, however, that if at that time the Sheltering Arms Hospital has ceased to be a free hospital, then it shall not receive any of said trust fund but all of said trust fund shall go to said Virginia Home for Incurables and said The Protestant Episcopal Church Home for Old Women.

"The foregoing provisions of this art. of my will, however, are subject to this modification that should my said nephew, A. B. Guigon, Jr., predecease me and leave a will devising to me his interest (being an 8/30 interest), or any portion thereof, in the two farms in Henrico county, Virginia, known as 'Ethelwood' and 'Half Sink,' then I give and devise the interest in said two farms so devised to me by my said nephew to his aunt, Miss Ellen Guigon, and his half-sister, Lisa Guigon, or to whichever of the two is living at the time of my death."

Article 19. "For many years I have been attending to the renting out and the management of the property known as the 'Sheppard Island Place' in Jefferson county, Arkansas, owned jointly by my sister, Mrs. Potts, my nephew, A. B. Guigon, Jr., and myself. I have attended to the collection of rents and the payment of taxes and from time to time have faithfully paid over to the owners whatever amounts were in my hands belonging to him. If any claim should be asserted against my estate by Mrs. Potts or her estate, or her issue, on account of my management of said real estate or any alleged claim that I failed in any instance to account for all sums received by me, then I direct that the legacies given in Articles 14, 15, and 16 of this will to the wives of my two nephews, James Sheppard Potts, and Joseph Schoolfield Potts, and the legacy to Adam Empie Potts shall be null and void and of no effect, and the sums mentioned in said legacies shall all go to State-Planters Bank & Trust Company, trustee for my nephew, A. B. Guigon, Jr., subject to the same conditions as the other portion of the trust estate created for his benefit."

Article 20. "In case any legatee under this will shall attempt in any way to contest this will, then and in that event any such legatee shall forfeit any legacy given to him or her and such legacy given to such legatee so contesting this will shall go to and belong to the State-Planters Bank & Trust Company as trustee for my nephew, A. B. Guigon, Jr."

Article 21. "I hereby nominate and appoint my nephew, A. B. Guigon, Jr., and the State-Planters Bank & Trust Company of Richmond, Virginia, as executors of this my last will and testament, and I request that they be allowed to qualify as such without being required to give security.

"I hereby nominate and appoint the State-Planters Bank & Trust Company of Richmond, Virginia, as trustee for the trust funds provided for in this will.

"I authorize my executors and my trustee to sell, lease, or exchange any property owned by me, either at public auction or privately, for cash or credit and upon such terms and conditions as to them may seem best, and no purchaser at any such sale shall be required to see to the application of the purchase money. I also authorize my executors and my trustee to retain as a permanent investment for my estate any property which may be owned by me at the time of my death, if they deem it advisable so to do."

The crucial articles are 13 and 18, but the other articles quoted throw light on the intention of the testator with reference to the estate conveyed by art. 13.

The rule of this court in the construction of wills is well stated by the late Mr. Justice BUTLER in *Union Trust Co.* v. *Madigan,* 183 Ark. 158, 35 S. W. 2d 349, where it was said: "The paramount principle in the construction of wills is that the general intention of the testator, if not in contravention of public policy or some rule of law, shall govern. The rules by which such intent may be discovered are stated in a general way in *Covenhoven* v. *Shuler,* 2 Paige, Ch. 122, 21 Am. Dec. 73, quoted with approval in the case of *Cox* v. *Britt,* 22 Ark. 567. 'That intent must be ascertained from the whole will taken

together; and no part thereof to which meaning and operation can be given, consistent with the general intention of the testator, shall be rejected. Where the words of one part of a will are capable of a two-fold construction, that should be adopted which is most consistent with the intention of the testator, as ascertained by other provisions in the will. And where the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words.'

"Where the language used by the testator is doubtful in its meaning, rules of construction are invoked to enable the courts to arrive at the intention, and, in case of ambiguous provisions, certain presumptions must be indulged."

Numerous cases might be cited to the same effect. It is the contention of appellee (1) that upon the death of Sheppard, the language used in art. 13, which declared: "I give and devise to State-Planters Bank & Trust Company, trustee, for my nephew, A. B. Guigon, Jr., all of my right, title and interest in and to certain real estate situated in the state of Arkansas, Jefferson county, and known as the 'Sheppard Island Place,' devised to said A. B. Guigon, Jr., an estate in an one-third undivided interest which was (a) a fee simple and (b) in a passive trust; (2) that the statute of uses immediately executed said passive trust and then and there vested said fee simple estate in Guigon; and (3) that appellee as sole devisee of Guigon, is entitled to said one-third undivided interest in fee simple," and the lower court sustained said contentions.

We cannot agree that article 13 devised a fee simple title to said Guigon, or any title other than a life estate. Standing alone, it would do so, but when article 18 is considered in connection with article 13, we see no room to doubt that he intended said Guigon to have only a life estate in his one-third interest in Sheppard's Island. In article 18 the testator conveys to the same trustee "all of the rest, residue and remainder" of his property, "to be held by it as a trust fund in trust for my said nephew, A. B. Guigon, Jr., the income therefrom

and the income from the property mentioned in article 13 hereof, to be paid to my said nephew, A. B. Guigon, Jr., during his lifetime, said income to be such as shall begin to accrue from the date of my death.'' He then proceeds to dispose of the principal or corpus of said trust estate, after the death of his nephew, based upon certain contingencies, and we understand that there is no disagreement between appellants and appellee that the appellant charities are entitled to this property, in the event it be held that appellee is not.

If the testator had wished and intended to convey the fee simple title to Guigon in article 13, he certainly did not do so in plain and simple language, such that a layman might understand. The language used therein cannot be attributed to ignorance of the language necessary and usually used in the conveyance of such an estate, for in article 8 of his will he devised two certain lots therein described to his nephew, A. B. Guigon, Jr., ''to be his in fee simple.'' So we know he knew how to devise his property in fee. Also when we read, consider and give effect to the intention of the testator as expressed, not only in article 18, but also in articles 19, 20 and 21, we are necessarily driven to the conclusion that it was the purpose and intention of the testator to give to his nephew a life estate only, in his interest in the plantation and in the residuary estate. In article 21 he appoints his nephew and the State-Planters Bank & Trust Company of Richmond, Virginia, as executors of his will and he appoints said bank as ''Trustee for the trust funds provided for in this will.'' He then authorizes his executors and his trustee to sell, lease or exchange any property owned by him at either public or private sale, or to retain any of his property as a permanent investment. These provisions show by clear intendment that the conveyance of the plantation by article 13 to his trustee was not a passive or dry trust, but one over which the trustee was to have authority.

We reach these conclusions with some reluctance, not only because it passes the title to strangers to the blood, but because it may result in a forced sale of valuable property, perhaps at a sacrifice. However that may be,

such is the will of the testator who had the undoubted right to give his property to whomsoever he saw fit, so long as he did not do so contrary to public policy or some rule of law. Appellee is a close relative of the testator and the residuary legatee under the will of her half-brother, A. B. Guigon, Jr., who died unmarried and without issue, but the testator, for reasons of his own, saw proper not to give his interest in the plantation to appellee, and only the income therefrom for life to his favorite beneficiary, A. B. Guigon, Jr., with remainder to the charities named.

The decree will be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.

It is so ordered.