McCOLLUM *v.* PRICE.

4-8564                                                                211 S. W. 2d 895

Opinion delivered June 7, 1948.

*Quinn & Williams,* for appellant.

*T. B. Vance,* for appellee.

MINOR W. MILLWEE, Justice. Pearl G. Price died testate in Miller county, Arkansas, on August 31, 1945, survived by appellee, W. R. Price, her husband, and appellants, Marion Dale McCollum and Sam Gardner McCollum, her sons by a former marriage.

On May 28, 1947, appellee instituted this suit in chancery court against appellants, as heirs at law of Pearl G. Price, and against appellant, Sam Gardner McCollum, as administrator of the estate of Pearl G. Price, deceased, alleging that Mrs. Price owned cash on deposit in two Texarkana banks in the amount of $2,400.62 undisposed of by will at the time of her death; that notwithstanding the fact that appellants were both nonresidents of the state appellant, Sam G. McCollum, had procured his appointment and assumed to act as administrator of the estate of Pearl G. Price and assumed dominion over the bank deposits; and that appellee was entitled to a curtesy right of one-third of the deposits for which judgment was prayed.

The answer of appellants denied that appellee was entitled to such curtesy right and alleged that Pearl G. Price had by her last will, which had been duly probated, bequeathed all her personal property to appellants. Appellant, Sam G. McCollum, denied that he was

a non-resident and admitted that he had taken over all property of the estate of his mother as the duly qualified administrator with will annexed of said estate. Appellant, Sam Gardner McCollum, later filed a cross complaint in which he alleged that appellee was liable for payment of funeral expenses which had been paid by the administrator in the sum of $452. Also that certain personal property belonging to the estate of Pearl G. Price was in the possession of appellee and should be delivered over to the administrator.

In his answer to this cross complaint, appellee alleged that the administrator had caused the will of Pearl G. Price to be probated in Miller Probate Court and that under the terms of said will the administrator was charged with the payment of said funeral expenses; and that said administrator, being one of the chief beneficiaries under the will, and having accepted his interest charged with the payment of said expenses, should be estopped to claim reimbursement from appellee. Appellee also alleged that he was the owner of the personal property claimed by the administrator, with the exception of certain enumerated household items, which he had at all times been ready to deliver to appellants.

Appellee also filed an amendment to his complaint alleging that he and Pearl G. Price, as husband and wife, entered into a written contract with J. M. Bates to purchase their home place for a consideration for $250 cash and $1,400 payable in 72 equal monthly installments; that, to secure the payment of the purchase price, appellee and his wife as owners by the entirety executed and delivered their joint note and deed of trust to Bates; that appellee paid the balance of said purchase money out of his separate funds in the amount of $1,566; that appellee and Mrs. Price went into possession of the property at the time of their purchase and occupied it as a homestead until her death, and that, since his wife's death, appellee has continued to occupy the premises claiming to be the owner thereof in fee by right of survivorship. It was prayed that title to the property be quieted in appellee as against the claims of appellants

either as heirs at law of Pearl G. Price or as devisees under her last will.

In their answer to the amendment to the complaint, appellants denied all material allegations therein and alleged that Pearl G. Price was the owner of the home place at the time of her death by virtue of a warranty deed from J. M. Bates and wife; that appellee had full knowledge of the deed and agreed to the taking of the deed in his wife's name and that the property should be her separate estate; that appellee had represented that the property belonged to his wife and should be estopped from now asserting any interest in the property; and that by the terms of the last will of Pearl G. Price, appellee was devised a conditional life estate in the home place, which is the only interest he has in the property.

At the time of the marriage of appellee and Pearl G. McCollum in 1931, she owned several parcels of real estate in Texarkana which came to her through her first husband. Mr. and Mrs. Price were divorced in 1934, but remarried about two months later. In January, 1939, they decided to purchase a home and entered into a written contract of purchase of a six-acre tract in the Alhambra Place Addition to the City of Texarkana through a local agent of the owner, J. M. Bates. The contract provided for a cash consideration of ·$250 and the balance of $1,250 payable in 72 monthly installments with interest. It was signed by both appellee and his wife and provided that the owner should convey the tract to them jointly. Mr. and Mrs. Price executed their joint note for the deferred payments and also a joint deed of trust to secure the payment of said note.

Appellee has been employed by a railway company for 22 years earning approximately $300 per month. He testified that a few days after he and his wife executed the contract of sale they went to the real estate agent's office to receive the deed, but it was not ready and that his wife returned to the office the next day and procured the deed to her as sole grantee in his absence and without his knowledge or consent. This deed was

acknowledged on January 26, 1939, and the joint deed of trust was signed and acknowledged on February 1, 1939. Appellee learned of the deed to his wife upon her return from the real estate office, but took no action to correct it. The down payment of $250 was made by Mrs. Price, but the 72 monthly payments were made out of appellee's earnings and all receipts evidencing the monthly payments were issued to them jointly. These payments were completed shortly prior to her death in August, 1945. Appellee further testified that he and his wife entered the contract of purchase as man and wife and with the understanding that "whichever died first the property would belong to the other." A real estate agent who lived near Mr. and Mrs. Price testified that in 1941 or 1942 a party was interested in buying the Price place; that he approached Mrs. Price about the matter and she told him that the place belonged to appellee, or that he was paying it out, and that the agent would have to see him.

In June, 1941, Pearl G. Price executed her will in which she devised several tracts of land to her two sons. In item 2 of the will she stated that all property bequeathed and devised in the will came from her first husband except the home place and one other tract which she purchased in her own right. Item 6 of the will devises the home place to appellee for life provided he occupy it as a home and continue the monthly payments on the unpaid balance due thereon, if any, at her death. It was further provided that if appellee failed to carry out either of these provisions the property should immediately vest in her sons, but if same were complied with the property should go to the two sons, at appellee's death. Mrs. Price advised her two sons of the existence of the will shortly after it was executed, but appellee did not know his wife had made a will until after her death in 1945. Appellee and his wife resided in the home place from 1939 until her death. Appellee has since continued to occupy the property claiming title in fee. The younger son of Mrs. Price lived with his mother and appellee for several years and was shown to be a resident of Arkansas at the time

he qualified as administrator with will annexed of his mother's estate. Appellee assisted the administrator in making an inventory of the personal property of the estate.

The chancellor decreed that at the time of the death of Pearl G. Price the bank deposits were her separate property and passed under her will to appellants, and that appellee took no curtesy right therein; that the deed of the home place to Pearl G. Price as sole grantee was taken in the absence of appellee and without his knowledge and consent; that the purchase of said home by appellee and his wife under the joint contract of purchase, note, deed of trust, the agreement between the parties and payment of the purchase money created an equitable estate by the entirety in appellee and his wife; that upon the death of Pearl G. Price, appellee became the owner of the home place by right of survivorship; and that the will of Pearl G. Price was ineffective to restrict such right. Title to the home place was quieted and confirmed in appellee. The cross complaint of the administrator seeking reimbursement of the payment for funeral expenses and recovery of certain items of personal property from appellee was dismissed for want of equity.

Appellants have appealed from that part of the decree finding appellee to be the owner of the home place under an estate by the entirety. Appellee has cross-appealed from that part of the decree holding that he took no curtesy right in the bank deposits of $2,400.62.

On the direct appeal appellants insist that the chancellor erred in holding that an estate by the entirety was created in appellee and his wife as to the home place under the rule followed in such cases as *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867; *Fine* v. *Fine,* 209 Ark. 754, 192 S. W. 2d 212; and *Green* v. *Green,* 210 Ark. 675, 197 S. W. 2d 294. In *Harbour* v. *Harbour, supra,* the rule is stated as follows: "It has been frequently held that where the husband purchased and paid for lands, taking the deeds therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift

to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased or to hold the same in trust for him. His conduct is referable to his affection for her and his duty to protect her against want, and it will be presumed to be a gift and, so far as he is concerned, becomes absolutely her property. *Wood* v. *Wood,* 100 Ark. 370, 140 S. W. 275; *Womack* v. *Womack,* 73 Ark. 281, 83 S. W. 937; *O'Hair* v. *O'Hair,* 76 Ark. 389, 88 S. W. 945.''

In *Fine* v. *Fine, supra,* we reaffirmed the following rule announced in *Parks* v. *Parks,* 207 Ark. 720, 182 S. W. 2d 470: ''The proof necessary to overcome the presumption of gift to the wife where the husband purchased land and caused the deed to be executed to her must be clear and convincing.'' In *Green* v. *Green, supra,* we said: ''But this presumption about the gift is not a conclusive presumption, and may be rebutted by evidence of facts antecedent to and contemporaneous with the conveyance, showing that the conveyance was not a gift.''

The instant case does not involve a situation where the husband purchased lands and caused the title to be placed in his wife's name. The evidence here supports the finding of the chancellor that the deed to Pearl G. Price by the vendor under the contract of purchase was procured by Mrs. Price in the absence of appellee and without his knowledge and consent. Under the terms of the contract of purchase, the vendor agreed to convey the property to appellee and his wife jointly. Appellee also testified that he and his wife entered the contract of purchase as man and wife with the understanding that in the case of the death of either the property would belong to the other.

In the case of *Roach* v. *Richardson,* 84 Ark. 37, 104 S. W. 538, it was held that where a husband and wife purchased land and the seller executes a bond for title or contract of sale to them jointly, they become seized of an equitable estate by the entirety and the survivor, upon payment of the purchase money, is entitled to the fee. In that case John Whitson and wife purchased the

tract of land and gave their joint notes for the purchase money. The sale was evidenced by bond for title or written contract of sale executed by the vendor to Whitson and wife, and Whitson died in possession of the land owing a balance of the purchase money, which was paid by his widow. Upon the payment of said balance the seller executed a deed to the widow. Justice Wood, speaking for the court, said:

"Did the bond for title or contract of sale convey to John Whitson and his wife an estate in entirety? In *Strauss* v. *White,* 66 Ark. 167, 104 S. W. 538, this court said: It has been uniformly held by this court that when the owner sells land, takes the notes of the vendee for the purchase money, and executes to him a bond for title, the effect of the contract is to create a mortgage in favor of the vendor upon the land to secure the purchase money, subject to all the essential incidents of a mortgage, as effectually as if the vendor had conveyed the land by an absolute deed to the vendee and taken a mortgage back to secure the purchase money. . . . It follows, then, . . . that the vendee, in analogy to the mortgagor, is the owner of an equity of redemption, and that his is the real and beneficial estate which is descendible by inheritance, devisable by will, and alienable by deed precisely as if it were an absolute estate of inheritance at law, subject, of course, to the rights of the vendor.' . . .

"One who holds bond for title from the holder of the legal title has an equitable estate in the land so conveyed to him. In equity he is the real owner, but subject to have his interest defeated or taken away if he fails to comply with the conditions of the bond. *Norman* v. *Pugh,* 75 Ark. 52, 86 S. W. 833. Here it is not pretended that the conditions of the bond were not fulfilled by Whitson and his wife. The deed to her after the death of her husband evidenced the conveyance of the entire estate which was hers by right of survivorship at his death. 'If an estate in land be given to the husband and wife, or a joint purchase be made by them, during coverture, they are not properly joint tenants, nor tenants in common, for they are but one person in law, and can not take by moieties. They are both seized of the entirety,

and neither can sell without the consent of the other, and the survivor takes the whole. This species of tenancy arises from the unity of husband and wife, and it applies to an estate in fee, for life or for years.' 2 Kent's Com. 132. See *Branch* v. *Polk,* 61 Ark. 388, 33 S. W. 434, 30 L. R. A. 324, 54 Am. St. Rep. 266; *Shaw* v. *Hearsey,* 5 Mass. 521.''

In the case of *Heinrich v. Heinrich,* 177 Ark. 250, 6 S. W. 2d 21, a husband and wife purchased a lot under a joint contract of purchase and the husband made a down payment of $150 and the wife paid the balance of the purchase money. It was held that an equitable estate by the entirety resulted and the court said: ''As the purchase money had been paid, this created an equitable estate in entirety by appellant and appellee. *Roach* v. *Richardson,* 84 Ark. 47, 104 S. W. 538. An estate by entirety, either legal or equitable, cannot be divested out of the husband and invested in the wife, or *vice versa,* by the courts.'' See, also, *Hawkins* v. *Lamb,* 210 Ark. 1, 194 S. W. 2d 5.

We think the rule announced in *Roach* v. *Richardson, supra,* is applicable here and that the written contract of sale, when considered with all the surrounding circumstances, created an equitable estate by the entirety in appellee and his wife. It is true that the deed to Whitson's widow was made after his death in that case, while the deed to Pearl G. Price in the case at bar was executed soon after the contract of sale. Appellants argue that this deed definitely concluded the transaction and that appellee, by failing to take any action to correct or set aside the deed, should now be estopped to assert any claim of title in the property. However, it appears that the court treated the bond for title, or contract of sale, and the due performance of its conditions by Whitson and his wife as controlling in the Richardson case. The joint contract of purchase was held to have established the nature of the estate created as an equitable one by the entirety. While appellee took no action to correct or set aside the deed to his wife in the instant case, his subsequent acts were in recognition of the joint contract of purchase. The deferred monthly pay-

ments were made for six years out of his wages and receipts were issued to them jointly in accordance with the terms of their joint note, deed of trust and contract of purchase. The making of the will by Mrs. Price in which she stated that she owned the home place in her own right was kept as a carefully guarded secret from appellee, and is inconsistent with her actions in obtaining monthly receipts issued to the parties jointly in compliance with the terms of the contract of purchase. Appellants do not occupy the position of innocent purchasers of the property for value, nor has their position changed for the worse by acts or omissions of appellee under all the circumstances in evidence.

We conclude that the trial court did not err in holding that an equitable estate by the entirety was created in appellee and his wife, and that he became the absolute owner of the home place by right of survivorship at her death.

The cross-appeal involves the correctness of the trial court's finding that appellee took no curtesy right in the bank deposits in the form of savings accounts left by Pearl G. Price in two Texarkana banks. Appellee first contends that the trial court erred in admitting in evidence the order of the referee admitting the will of Pearl G. Price to probate. It is argued that Act 448 of 1941, which authorizes the referee in probate to admit wills to probate, is unconstitutional. When the original will was offered in evidence, appellee objected to its introduction because it was a part of the material papers of the probate file. A copy being substituted, the will was introduced without further objection. Appellants then offered to introduce the order of the referee admitting the will to probate, when appellee objected on the ground above stated. We think appellee is estopped to urge the inadmissibility of the order admitting the will to probate. In none of the pleadings filed by him did he in any manner question the validity of the will. On the contrary, when the administrator filed the cross complaint against appellee seeking to charge him with the payment of the funeral expenses of his wife, appellee filed a response thereto stating that the administrator

had "caused said will to be probated" and specifically pleaded the terms of the will, which charged the administrator with the payment of said funeral expenses. The trial court held in favor of appellee on the administrator's cross complaint and dismissed it for want of equity. Having thus relied upon the provisions of the will as a defense to the cross complaint, and having received the benefit of the court's action based on such defense, appellee will not be heard to question the authority of the referee to admit the will to probate in this collateral proceeding.

It is next insisted by appellee that the terms of the will were insufficient to pass title to the bank savings accounts to appellants. The will of Pearl G. Price is complete and appears to be an attempt on her part to dispose of all of her property. After devises of several tracts of land, or an interest therein, to appellants, the will contains the following provision: "Item 8: I give and bequeath to my sons, Marion Dale McCollum and Sam Gardner McCollum, all of my household and all other personal possessions, of whatsoever kind and wherever located." It is contended that this bequest is not broad enough to cover the savings accounts in the bank under the doctrine of *ejusdem generis*. Appellee relies on the recent case of *McLane* v. *Chancy*, 211 Ark. 280, 200 S. W. 2d 782. In that case the testatrix devised and bequeathed her home "together with all the personal property therein" to the named beneficiary. We held that the term "personal property therein" was not broad enough to include the proceeds from postal savings certificates and an insurance policy found in the home, and that the bequest of personal property carried only the usual and ordinary household effects. The bequest in the case at bar is not limited to the contents of a house or a certain place, but includes all personal possessions, household or otherwise, owned by testatrix wherever located.

"Under the doctrine of *ejusdem generis*, where there is a testamentary gift of property, or of the property of a general description, contained in a particular place,

and a specific enumeration is coupled with a general description of the property given, it is presumed the testator intended that only things of the same kind as those enumerated should pass. Thus where the bequest of certain property and its 'contents' is coupled with an enumeration of things, it will be presumed that the testator intended that only things *ejusdem generis* should pass." Thompson on Wills (2d Ed.), § 242. The doctrine does not express a rule of property and is only of value as an aid to the discovery of the testator's intent, which must be gathered from the will in its entirety. If that intent is shown to be contrary to that which the doctrine would suggest, then the testamentary intent will prevail and the rule will not be applied. Anno. 137 A. L. R. 214.

In *Nolan* v. *Perry*, 202 Ark. 449, 150 S. W. 2d 751, it was said: "As has many times been said, it is the duty of the court to ascertain, from a consideration of all the language used in the will, the intention of the testator and to give effect to that intention, unless contrary to some rule of law or public policy. *Sheltering Arms Hospital* v. *Shineberger*, 201 Ark. 780, 146 S. W. 2d 921. Another rule, equally well settled, is that wills should be so construed as to avoid partial intestacy, unless the language used compels a different construction. *Union Trust Co.* v. *Madigan,* 183 Ark. 158, 35 S. W. 2d 349; *Pletner* v. *Southern Lbr. Co.*, 173 Ark. 277, 292 S. W. 370."

There is no residuary clause in the will under consideration and this is an additional circumstance which precludes any logical inference other than the intent on the part of testatrix to make a full disposition of her property. *Union Trust Company* v. *Madigan, supra.* When the whole will is construed we think it was the clear intention of Mrs. Price to bequeath all of her personal property to appellants, including the bank deposits. Limitation of the wording of item 8 to household goods or other property of that character would render meaningless the term "other personal possessions, of whatsoever kind and wherever located" and would be contrary to the testamentary intent as gathered from the entire will.

The decree is correct and is accordingly affirmed both on direct and cross-appeal.